T.C. Memo. 2007-19

UNITED STATES TAX COURT

BIDYUT K. BHATTACHARYYA AND DIANA T. BHATTACHARYYA, Petitioners
<u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15024-04.                    Filed January 30, 2007.

Bidyut K. Bhattacharyya and Diana T. Bhattacharyya, pro sese.

<u>Wesley F. McNamara</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, <u>Judge</u>:  Respondent determined a deficiency in petitioners' 2000 Federal income tax of $314,372 and an addition

to tax under section 6651(a)(1) of $38,837.[1]  After concessions,[2] the issues for decision are:  (1) Whether respondent's and petitioners' motions to conform pleadings to the evidence should be granted; (2) whether petitioners received but failed to report certain items of income; (3) whether petitioners are liable for a 10-percent additional tax under section 72(t) on early distributions from qualified retirement plans; (4) whether petitioners are entitled to certain itemized deductions; (5) whether petitioners are liable for any alternative minimum tax; and (6) whether petitioners are liable for an addition to tax under section 6651(a)(1).

                        FINDINGS OF FACT

     Some of the facts have been stipulated and are so found. The stipulation of facts, supplemental stipulation of facts, and the second supplemental stipulation of facts and attached exhibits are incorporated herein by this reference.  At the time they filed their petition, petitioners resided in Beaverton, Oregon.

---

[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All amounts are rounded to the nearest dollar.

[2]  The parties have agreed to certain issues, either in the stipulation of facts, at trial, or on brief, and respondent has conceded other issues.  The parties' agreements and concessions are discussed herein.

Bidyut K. Bhattacharyya (petitioner) was born on October 8, 1955, and Diana T. Bhattacharyya (Mrs. Bhattacharyya) was born on January 19, 1960. From July 16, 1984, until October 21, 2000, petitioner was employed by Intel Corporation (Intel).

A.  Income From Salary, Bonuses, Stock Options, and Other Sources

During 2000, petitioner received compensation from Intel in the form of a salary, bonuses, and through the exercise of nonqualified stock options. On January 11, 2000, petitioner exercised a nonqualified stock option granted by Intel to purchase 800 shares of stock at $8.391 per share. The market price on January 11, 2000, was $92.00 per share, resulting in a realized gain of $66,887. On April 17, 2000, petitioner exercised a nonqualified stock option granted by Intel to purchase 5,000 shares of stock at $8.391 per share. The market price on April 17, 2000, was $116.4062 per share, resulting in a realized gain of $540,076. Petitioner exercised the nonqualified stock options through an investment brokerage account with Merrill Lynch (Merrill Lynch brokerage account).

Intel issued petitioner a Form W-2, Wage and Tax Statement, for 2000 (the Intel Form W-2), which reported total wages, tips, and other compensation of $746,191. Of that amount, $606,963 represented the gain realized by petitioner on the exercise of the nonqualified stock options.

During 2000, petitioners received a State income tax refund of $34,500 for State income taxes paid with respect to their 1999 tax year.

B.  Petitioner's Intel Retirement Plans

At the time he terminated his employment, petitioner maintained three Intel retirement plans, Plan 15104, Plan 15105, and Plan 15106.

Plan 15104 was a nonqualified deferred compensation plan called the Sheltered Employee Retirement Plan Plus (or SERP+) and was administered by Fidelity Investments Institutional Operations Company (Fidelity Institutional) on behalf of Intel.  On December 22, 2000, petitioner received $285,603 from Intel, representing the full distribution of Plan 15104 in the gross amount of $372,850 less Federal and State withholding taxes.  Fidelity Institutional issued petitioner a Form W-2 with respect to Plan 15104 for 2000 (the Plan 15104 Form W-2).  The parties stipulated that the Plan 15104 Form W-2 accurately reflected the distribution amount, withholding taxes paid, that petitioner made no employee contributions, and that no portion of the distribution was rolled over into another account.

Plan 15105 was a qualified retirement plan called the Intel Corporation 401(k) Savings Plan and was administered by Fidelity Institutional on behalf of Intel.  Petitioner borrowed money from Plan 15105 and made payments through payroll withholding.

Petitioner ceased making payments after he terminated his employment, and the loan was considered in default. The loan was repaid in 2000 by an offsetting distribution from Plan 15105 of $15,552. During October or November of 2000, petitioner made a direct rollover of $286,390 from Plan 15105 into his Fidelity Investments IRA Rollover Account (Fidelity IRA). Fidelity Institutional issued petitioner a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., with respect to Plan 15105 for 2000 (the Plan 15105 Form 1099-R). The parties stipulated that the Plan 15105 Form 1099-R accurately reflected the offsetting distribution made in satisfaction of the loan and the direct rollover into the Fidelity IRA, indicated that petitioner made employee contributions of $1,108, and reported a taxable amount of $14,443.

Plan 15106 was a qualified retirement plan called the Intel Corporation Profit Sharing Retirement Plan and was administered by Fidelity Institutional on behalf of Intel. Petitioner borrowed money from Plan 15106 and made payments through payroll withholding. Petitioner ceased making payments after he terminated his employment, and the loan was considered in default. The loan was repaid in 2000 by an offsetting distribution from Plan 15106 of $30,623. On November 6, 2000, petitioner made a direct rollover of $463,930 from Plan 15106

into his Fidelity IRA. Fidelity Institutional issued petitioner a Form 1099-R with respect to Plan 15106 for 2000 (the Plan 15106 Form 1099-R). The parties stipulated that the Plan 15106 Form 1099-R accurately reflected the offsetting distribution made in satisfaction of the loan and the direct rollover into the Fidelity IRA, indicated that petitioner made no employee contributions, and reported a taxable amount of $30,623.

C.    Petitioner's Individual Retirement Accounts (IRAs)

As described above, petitioner made direct rollovers from Plan 15105 and Plan 15106 to his Fidelity IRA totaling $750,320 in 2000. Petitioner received the following distributions from his Fidelity IRA:

| Date | Amount |
|------|--------|
| Nov. 2, 2000 | $100,000 |
| Nov. 9, 2000 | 10,000 |
| Nov. 9, 2000 | 20,000 |
| Nov. 16, 2000 | 30,000 |
| Total | 160,000 |

On November 9 and 16, 2000, petitioner made direct rollovers of $500,000 and $62,930, respectively, from his Fidelity IRA into another IRA administered by US Bancorp Piper Jaffray (US Bancorp IRA). On November 10 and 17, 2000, petitioner received distributions of $500,000 and $62,930, respectively, from his US Bancorp IRA.

On December 11, 2000, petitioner transferred 815 shares of Intel stock from his Fidelity IRA into his US Bancorp IRA. On December 22, 2000, the Intel stock was sold, and petitioner was issued a check for $27,000.

US Bancorp issued petitioner a Form 1099-R with respect to his US Bancorp IRA for 2000. The Form 1099-R reflected the distributions of $500,000 and $62,930, and the check for $27,000, for total distributions of $589,930.

D. Petitioners' 1999 Federal Income Tax Return

Petitioners filed a joint Federal income tax return for 1999 on June 18, 2003.[3] Petitioners reported adjusted gross income of $564,156, itemized deductions of $427,211, a total tax of $33,735, an overpayment of tax of $116,498. Petitioners requested a refund of $105,228 and that $11,270 be applied to their estimated tax for 2000. Petitioners' 1999 tax return did not include a Form 6251, Alternative Minimum Tax--Individuals.

Respondent examined petitioners' 1999 tax year and determined that petitioners were not entitled to a refund or estimated tax credit and were liable for alternative minimum tax of $105,616. On November 17, 2003, respondent assessed additional tax of $105,616 and interest of $33,935. The Certificate of Official Record for petitioners' 1999 tax year

_____

[3] Petitioners' 1999 tax year is not at issue.

reflects that this assessment of additional tax and interest was "abated" on November 8, 2004.

On October 27, 2004, petitioners filed a refund suit in U.S. District Court for the District of Oregon, at docket No. CV-04-01563-KI. By opinion and order dated March 16, 2005, the District Court dismissed petitioners' suit for lack of subject matter jurisdiction. On May 22, 2006, the Court of Appeals for the Ninth Circuit affirmed the District Court's dismissal for lack of subject matter jurisdiction. Bhattacharyya v. Commissioner, 180 Fed. Appx. 763 (9th Cir. 2006).

E.    Petitioners' 2000 Federal Income Tax Return

Petitioners filed a joint Federal income tax return for 2000 on May 19, 2003. Petitioners reported wages, salaries, tips, etc., of $746,191, the amount reported by Intel on the Form W-2. On an attached "Exhibit II", petitioners summarized their IRA and retirement plan distributions and rollovers as follows:

| Plan | Amt. withdrawn | Rollover amt. | Notes |
|------|----------------|---------------|-------|
| Fidelity IRA | $100,000 | -- | |
| Fidelity IRA | 10,000 | $10,000 | "Direct rollover correction" |
| Fidelity IRA | 20,000 | 10,000 | "Direct rollover correction" |
| Fidelity IRA | 500,000 | 500,000 | Direct rollover to US Bancorp IRA |
| Fidelity IRA | 30,000 | -- | |
| US Bancorp IRA | 500,000 | 285,603 | |
| US Bancorp IRA | 62,931 | -- | |
| US Bancorp IRA | 27,000 | -- | |
| Total | 1,249,931 | 805,603 | |

Based on Exhibit II, petitioners reported total taxable IRA distributions of $444,327.  Petitioners also reported total pension distributions of $372,850, reflecting the distribution from Plan 15104, but they determined that only $192,850 was taxable.  After including interest income, dividend income, other income, and a capital loss of $3,000, petitioners reported adjusted gross income of $1,402,076.  Petitioners' reported adjusted gross income did not include:  (1) The State income tax refund of $34,500;[4] (2) $180,000 of the distribution from Plan

_____

[4]  The parties agree that petitioners are liable for Federal income tax in 2000 on the State income tax refund received in
(continued...)

15104; (3) the offsetting distributions made in satisfaction of the loans from Plan 15105 and Plan 15106 of $15,552 and $30,623, respectively; and (4) $305,603 of the IRA distributions.

On an attached Schedule A, Itemized Deductions, petitioners reported itemized deductions of $1,118,870, summarized by petitioners as follows:

| Type of Expense | Amount | Notes |
| --- | --- | --- |
| Option Int | $37,738 | US Bank Corp. |
| Option Int | 186,370 | Merrill Lynch |
| MLF | 71,657 | Merrill Lynch Fees |
| US Bank Fees | 26,000 | US Bank Fees |
| Opt.int | 20,164 | Merrill Lynch |
| Cash Pay | 330,979 | Merrill Lynch, to protect Taxable income |
| Cash Pay | 123,000 | Merrill Lynch, to protect Taxable income |
| Other | 322,962 | Merrill Lynch, to protect Taxable income |
| Total | 1,118,870 | |

Petitioners reported taxable income of $213,977, tax of $60,080, tax on IRAs and other retirement plans of $63,717, and total tax

---

[4](...continued)
2000.

of $123,797.[5]  After deducting total payments of $282,821,
petitioners requested a refund of $131,024 and that $28,000 be
applied to their 2001 estimated tax.  Petitioners' 2000 tax
return did not include a Form 6251 or any other calculation of
their alternative minimum tax liability.

In response to a letter from respondent inquiring about the
absence of an alternative minimum tax computation, petitioners
sent respondent a letter on September 15, 2003, and attached a
Form 1040X, Amended U.S. Individual Income Tax Return
(petitioners' first Form 1040X).  On petitioners' first Form
1040X, petitioners included a Form 6251, determined an
alternative minimum tax liability of $56,827, but reduced their
income by more than $630,000 and claimed a refund of $9,270.
Respondent did not file petitioners' first Form 1040X.

On May 25, 2004, respondent issued petitioners a notice of
deficiency.  Respondent determined a deficiency in petitioners'
2000 Federal income tax of $314,372, based on respondent's
determination that petitioners were liable for alternative
minimum tax of $314,371.[6]  Respondent also determined that

---

[5]  It is unclear how petitioners calculated the tax on IRAs
and other retirement plans, but $63,717 is apparently
petitioners' calculation of a 10-percent additional tax under
sec. 72(t).

[6]  Respondent also increased petitioners' itemized
deductions by $1 to correct a rounding error made by petitioners.

petitioners were liable for an addition to tax under section 6651(a)(1) of $38,837.

On June 26, 2004, petitioners sent respondent a letter and attached another Form 1040X (petitioners' second Form 1040X). Petitioners' second Form 1040X was identical to petitioners' first Form 1040X, but the letter included an additional explanation of the changes made by petitioners to their original Federal income tax return.  Respondent did not file petitioners' second Form 1040X.

Petitioners filed their petition with this Court on August 20, 2004.  Petitioners requested the Court to determine that they are due a refund "$9000 (Back Approx.)".  Respondent filed an answer on September 29, 2004, but did not seek an increased deficiency or addition to tax.

This case was called during the Court's regular trial session in Portland, Oregon, beginning December 5, 2005.  On February 21, 2006, respondent filed a Motion for Leave to Amend Answer to Conform to Evidence Presented at Trial and to Claim an Increased Deficiency and Addition to Tax, with Accompanying Proposed Amendment to Answer (respondent's motion to conform the pleadings to the evidence) under Rule 41(b).  In the amendment to answer, which was lodged with the Court on February 21, 2006, respondent asserted that petitioners were liable for an increased

deficiency of $561,309, and an increased section 6651(a)(1) addition to tax of $100,571.

On November 3, 2006, petitioners filed a Motion for Amended Petition Consistent with the Evidences Presented at Trial, and to Claim a Refund by Petitioners for $76,890.00, with Accompanying Proposed Amended Petition (petitioners' motion to conform pleadings to the evidence) under Rule 41(b).

OPINION

I.   Respondent's and Petitioners' Motions To Conform Pleadings to the Evidence

As a preliminary matter, we must determine whether respondent's and petitioners' motions to conform pleadings to the evidence should be granted.  Section 6214(a) requires a claim for increased deficiency to be asserted at or before the hearing or rehearing.  It is well established that the word "hearing" used in section 6214(a) includes all Tax Court proceedings in a case through entry of decision.  Henningsen v. Commissioner, 243 F.2d 954, 959 (4th Cir. 1957), affg. 26 T.C. 528 (1956); Law v. Commissioner, 84 T.C. 985, 989 (1985).  Rule 41(b) allows the parties to amend their pleadings to conform with the evidence presented at trial.[7]  Whether a motion seeking an amendment to

_____

[7]  Rule 41(b) provides in part:

(1) Issues Tried by Consent:  When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects
(continued...)

the pleadings to conform to the evidence should be allowed is within the sound discretion of the Court.  Commissioner v. Estate of Long, 304 F.2d 136, 143-145 (9th Cir. 1962).  If granting the motion would result in unfair surprise or prejudice to the nonmoving party, the motion should be denied.  Church of Scientology v. Commissioner, 83 T.C. 381, 469 (1984), affd. 823 F.2d 1310 (9th Cir. 1987).

In respondent's motion to conform pleadings to the evidence and in the lodged amendment to answer, respondent asserts an increased deficiency of $561,309, and an increased addition to tax under section 6651(a)(1) of $100,571.  The increased deficiency is not based on petitioners' liability for alternative minimum tax, as was the deficiency asserted in the notice of deficiency.  Instead, the increased deficiency results from the

---

[7](...continued)
as if they had been raised in the pleadings.  The Court, upon motion of any party at any time, may allow such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues, but failure to amend does not affect the result of the trial of these issues.

(2) Other Evidence:  If evidence is objected to at the trial on the ground that it is not within the issues raised by the pleadings, then the Court may receive the evidence and at any time allow the pleadings to be amended to conform to the proof, and shall do so freely when justice so requires and the objecting party fails to satisfy the Court that the admission of such evidence would prejudice such party in maintaining such party's position on the merits.

increase in income and the disallowance of many of petitioners' itemized deductions.

Petitioners object to respondent's motion to conform pleadings to the evidence, arguing: (1) An evidentiary ruling made by the Court during trial prevents respondent from seeking an increased deficiency; and (2) an amendment to answer would result in unfair surprise and would prejudice petitioners because the amendment is based on grounds different from those asserted in the notice of deficiency.

Petitioners also filed a motion to conform pleadings to the evidence. Petitioners assert that, based on the evidence and testimony presented at trial, they are entitled to a refund in the amount of $76,890, instead of the approximately $9,000 asserted in the petition. Respondent does not object to the granting of petitioners' motion to conform pleadings to the evidence.

Petitioners' objection notwithstanding, we find that granting respondent's or petitioners' motions to conform pleadings to the evidence would not result in unfair surprise or prejudice to either party. Petitioners' argument that an evidentiary ruling made by the Court prevents respondent from seeking an increased deficiency is based on a misunderstanding of the Court's evidentiary ruling. Petitioners focus on Exhibit 42-R, which was a Form 4549, Income Tax Examination Changes,

prepared by respondent and shown to petitioners on the morning of trial. Essentially, Exhibit 42-R summarized respondent's interpretation of the impact the exhibits attached to the parties' joint stipulations of fact had on petitioners' tax liability. The Court did not admit Exhibit 42-R into evidence. Petitioners appear to argue that, because the Court did not admit Exhibit 42-R into evidence, the Court rejected the arguments contained therein. The Court's ruling was limited to the admissibility of Exhibit 42-R and was not a ruling on the merits of respondent's arguments contained therein. The increased deficiency and addition to tax sought by respondent are not based on Exhibit 42-R, but instead are based on the exhibits admitted into evidence as part of the parties' joint stipulations of fact. The Court's ruling on Exhibit 42-R does not affect respondent's ability to rely on the exhibits admitted into evidence in seeking an increased deficiency and addition to tax.

Petitioners' argument that an amendment to answer would result in unfair surprise or prejudice is not persuasive. The amendment to answer would change the issue in this case from whether petitioners are liable for alternative minimum tax to whether petitioners received and did not report certain items of income and whether they are entitled to certain itemized deductions. As stated above, in seeking an increased deficiency and addition to tax, respondent relies on exhibits attached to

the parties' joint stipulations of fact.  Petitioners rely on these same exhibits in seeking an increased refund.  Petitioners cannot expect to use this evidence to seek an increased refund and at the same time shield themselves from an increased deficiency or addition to tax based on the same evidence. Additionally, respondent informed petitioners at various times before trial, including in respondent's pretrial memorandum, that respondent intended to raise the issues asserted in the amendment to answer.  Petitioner's testimony also demonstrated his knowledge of respondent's intention.

Accordingly, we shall grant respondent's and petitioners' motions to conform pleadings to the evidence.

## II.  Items of Income

Generally, taxpayers bear the burden of proving that the Commissioner's determinations are incorrect.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  However, the Commissioner bears the burden of proof with respect to any new matter or increases in deficiency.  Rule 142(a).  Once the Commissioner produces evidence sufficient to establish a prima facie case, the burden shifts to the taxpayers of coming forward with evidence sufficient to rebut the Commissioner's proof.  See King v. Commissioner, T.C. Memo. 1995-524; Cally v. Commissioner, T.C. Memo. 1983-203 (citing Papineau v. Commissioner, 28 T.C. 54 (1957)).

Respondent asserts that petitioners received unreported or underreported taxable income from the following sources: (1) $372,850 from the distribution from Plan 15104, of which only $192,850 was reported; (2) $14,443 and $30,623 from the offsetting distributions made in satisfaction of the loans from Plan 15105 and Plan 15106, respectively, none of which was reported; and (3) $749,930 on the distributions from the Fidelity IRA and the US Bancorp IRA, of which only $444,327 was reported as being taxable.[8] Respondent raised these matters in the amendment to answer, not in the notice of deficiency, and now seeks an increased deficiency based in part on these new matters. Therefore, respondent bears the burden of proof with respect to these new matters. See Rule 142(a).

Petitioners dispute respondent's assertions and argue that, of the $746,191 reported as taxable income on the Intel W-2, $606,963 is not included in gross income.[9]

---

[8] Petitioners also received but did not report a State income tax refund of $34,500. As noted above, the parties agree that petitioners are liable for Federal income tax in 2000 on that refund. See supra note 4.

[9] On petitioners' first and second Forms 1040X, petitioners assert that their taxable income should be reduced by $632,639. In their amended petition and on brief, petitioners argue that their taxable income should be reduced by $606,963. The origin of this discrepancy is unclear.

A.    <u>Distribution From Plan 15104</u>

Gross income means all income from whatever source derived, including income from pensions.  Sec. 61(a)(11).  However, distributions of after-tax employee contributions from a pension plan constitute a nontaxable return of capital.  See <u>Lange v. Commissioner</u>, T.C. Memo. 2005-176.

The Plan 15104 Form W-2 reflects a gross distribution to petitioner from Plan 15104 of $372,850 and that petitioner made no employee contributions to Plan 15104.  The parties stipulated the accuracy of the Plan 15104 Form W-2, and no evidence in the record contradicts the Plan 15104 Form W-2.  This evidence, if not rebutted, is sufficient for respondent to meet his burden of proving that petitioner received a distribution of $372,850 from Plan 15104 and that no employee contributions were made to Plan 15104.  The burden shifts to petitioners to come forward with evidence that all or a portion of that distribution is not included in their gross income.

On their tax return, petitioners reported the distribution of $372,850 from Plan 15104, but they asserted that only $192,850 of that amount was taxable.  In the information accompanying petitioners' second Form 1040X, petitioners further reduced the amount they reported as taxable to $132,674.  Petitioners' theory is that the distribution contained after-tax employee contributions, and thus only a portion of the distribution was

taxable.  Petitioners explain their theory on brief:

> [In] 2000 [the] bonus received was $79568.00.  * * *
> The federal tax withheld on that money was $10,582.54.
> * * *  [the] remaining * * * bonus amount went in SERP+
> account for the tax year 2000.  * * * Petitioners
> estimated about 1/2 of the SERP money [came] from
> depositing bonus money after paying tax and remaining
> is the growth of the money due to investment by
> Fidelity.  Thus $186425.25, which is exactly 1/2 of the
> total distribution, was assumed growth and inserted in
> * * * the form 1040.

Petitioners' estimation that approximately half of the Plan 15104 distribution consisted of after-tax employee contributions is contrary to the Plan 15104 Form W-2, on which Fidelity Institutional reported that no employee contributions were made. No evidence in the record supports petitioners' claim.[10] Petitioners have not met their burden of coming forward with evidence that all or a portion of that distribution is not included in their gross income.

Therefore, we find that the distribution of $372,850 from Plan 15104 is included in petitioners' gross income.

---

[10]  Petitioners cite Exhibit 21-J as evidence that half of the Plan 15104 distribution was comprised of employee contributions.  Exhibit 21-J, a pay statement from Intel dated Oct. 31, 2000, indicates that a total "SERP deferral" of $39,784 had been made between Jan. 1 and Oct. 31, 2000.  Petitioner maintained several accounts that were at various times referred to as "SERP" accounts.  Exhibit 21-J does not indicate that the "SERP deferral" was made with respect to Plan 15104 and does not otherwise contradict the Form W-2 issued by Fidelity Institutional.

B.    Distributions From Plan 15105 and Plan 15106

Petitioners did not report any distributions made from Plan 15105 or Plan 15106 on their Federal income tax return.  However, petitioners received Forms 1099-R from Fidelity Institutional, which reflected:  (1) An offsetting distribution of $15,552 was made from Plan 15105 in satisfaction of petitioner's loan from Plan 15105; (2) petitioner made employee contributions to Plan 15105 totaling $1,109; (3) due to the employee contributions, the taxable amount of the offsetting distribution from Plan 15105 was $14,443; (4) an offsetting distribution of $30,623 was made from Plan 15106 in satisfaction of petitioner's loan from Plan 15106; and (5) petitioner made no employee contributions to Plan 15106. The parties stipulated the accuracy of the Forms 1099-R, and no evidence in the record contradicts the Forms 1099-R.  This evidence is sufficient for respondent to meet his burden of proof.  Therefore, we find that $14,443 and $30,623 of the offsetting distributions from Plan 15105 and Plan 15106, respectively, are included in petitioners' gross income.[11]

C.    IRA Rollovers and Distributions

In general, distributions from an IRA are included gross income in the year received.  Sec. 408(d)(1).  A distribution to

_____

[11]  Petitioners did not introduce evidence to contradict the Forms 1099-R, nor did they address the distributions on brief. We find that petitioners abandoned any argument that the offsetting distributions are not included in their gross income.

the individual for whose benefit an IRA is maintained is excluded from gross income, however, if the entire amount is paid into an IRA for the benefit of the same individual within 60 days.  Sec. 408(d)(3)(A).  Exclusion of a rollover from one IRA to another can only be made by an individual once during any 1-year period.  Sec. 408(d)(3)(B).  However, the transfer of a taxpayer's funds directly from the trustee of one IRA to the trustee of another IRA, in a fashion that does not involve any payment directly to the taxpayer, is not a "rollover" for purposes of section 408(d)(3) and therefore does not trigger or violate the 1-year limitation.  Rev. Rul. 78-406, 1978-2 C.B. 157; see also Crow v. Commissioner, T.C. Memo. 2002-178; Martin v. Commissioner, T.C. Memo. 1992-331, affd. without published opinion 987 F.2d 770 (5th Cir. 1993).

On their Federal income tax return, petitioners reported the rollovers of $286,390 from Plan 15105 and $463,930 from Plan 15106 to the Fidelity IRA, the subsequent direct rollovers of $500,000 and $62,390 from the Fidelity IRA to the US Bancorp IRA, and the distributions from the Fidelity IRA and the US Bancorp IRA to petitioners totaling $749,930.  The parties agree that the rollovers from Plan 15105 and Plan 15106 to the Fidelity IRA and the direct rollovers of $500,000 and $62,930 from Fidelity IRA to the US Bancorp IRA are excluded from income.  See sec. 402(c); Rev. Rul. 78-406, 1978-2 C.B. 157.  The parties also agree that

petitioners received distributions totaling $749,930 from the Fidelity IRA and the US Bancorp IRA.  However, the parties disagree as to what extent the distributions totaling $749,930 are included in petitioners' gross income.

Respondent argues that $749,930 is included in petitioners' gross income.[12]  The record establishes, and petitioners do not dispute, that during November and December 2000, petitioners received distributions from the Fidelity IRA totaling $160,000 and from the US Bancorp IRA totaling $589,930.  Respondent has met his burden of establishing a prima facie case that petitioners received IRA distributions totaling $749,930.  Petitioners bear the burden of coming forward with evidence that all or a portion of the IRA distributions are not included in their gross income.

Petitioners argue that $285,603 of the $500,000 distribution from the US Bancorp IRA was rolled over into another IRA and is

---

[12]  Petitioners argue that the numbers proposed by respondent "should be discarded due to inconsistency and generation of various random numbers generated by respondent in [sic] various times."  At various times during preparation for trial, respondent changed his position regarding what amount of the rollovers and distributions were includable in petitioners' gross income.  It is worth noting that, on each occasion, respondent reduced the amount included in petitioners' gross income as petitioners substantiated the various rollovers.  Our ultimate conclusion on this issue is not based on the changes in respondent's position, but instead is based on the record.

thus not included in their gross income.[13]  Petitioners provided no evidence that such a rollover took place, or that the rollover took place within 60 days of the distribution.  Petitioners were in a superior position with respect to access to information that would prove the amount and date of the alleged rollover.  By failing to produce such information, petitioners have failed to meet their burden of coming forward with evidence that $285,603 of the IRA distributions is not included in their gross income.

Therefore, we find that the distributions from the Fidelity IRA and the US Bancorp IRA totaling $749,930 are included in petitioners' gross income.

D.   Income From the Exercise of Intel Stock Options

Gross income includes compensation for services, "including fees, commissions, fringe benefits, and similar items".  Sec. 61(a)(1).  Section 83(a) provides in pertinent part that if property is transferred to a taxpayer in connection with the performance of services (e.g., stock transferred to a taxpayer

---

[13] On their Federal income tax return, petitioners reported that only $444,327 of the $749,930 in distributions from the Fidelity IRA and the US Bancorp IRA was included in their gross income.  Petitioners' position was based on their assertion that $20,000 of the $160,000 in distributions from the Fidelity IRA and $285,603 of the $500,000 distribution from the US Bancorp IRA were rolled over into another IRA.  On brief, petitioners claimed that only $285,603 of the $500,000 distribution from the US Bancorp IRA was rolled over into another IRA and conceded that $469,091 was includable in their gross income.  Thus, we find that petitioners have abandoned their argument that $20,000 of the $160,000 in distributions from the Fidelity IRA was rolled over into another IRA.

upon the exercise of a stock option), the excess of the fair market value of the property (stock) over the amount, if any, paid for the property (the exercise price) shall be included in the taxpayer's gross income in the first year in which the taxpayer's rights in the property are not subject to a substantial risk of forfeiture. See Montgomery v. Commissioner, 127 T.C. 43, 53-54 (2006).

Petitioners assert that, of the $746,191 in taxable income reported on the Intel W-2, $606,963 is not included in gross income. Petitioners do not address this assertion in detail. However, it appears that petitioners are arguing that the $606,963 should be treated as long-term capital gain, which could be offset by long-term capital losses realized in 2000, and thus would not be included in their gross income. Petitioners' position is without merit.

Petitioner exercised on January 11 and April 17, 2000, nonqualified stock options granted to him by Intel, resulting in realized gains of $66,887 and $540,076, respectively (the spread between the exercise price and the market price of the stock on the dates of exercise). This gain is not recognized as long-term capital gain. Instead, section 83(a) and section 1.83-1(a)(1), Income Tax Regs., establish that such gain is ordinary income included in petitioners' gross income as compensation in 2000,

the year of exercise.[14]  Therefore, we find that the $746,191 in taxable income reported on the Intel W-2, including the $606,963 attributable to the exercise of nonqualified stock options, is included in petitioners' gross income as ordinary income.

III. Additional Tax on Early Distributions From Qualified Retirement Plans and IRAs

Section 72(t)(1) imposes a 10-percent additional tax on early distributions from qualified retirement plans.  Qualified retirement plans are defined to include IRAs as defined in section 408(a) and (b).  Secs. 72(t)(1), 4974(c).  The 10-percent additional tax does not apply to certain distributions, including distributions made after an employee attains age 59-1/2 and distributions attributable to the employee's disability.  Sec. 72(t)(2)(A)(i), (iii).  Respondent alleges that petitioners are liable for the 10-percent additional tax on the taxable distributions from Plan 15105 and Plan 15106 (both qualified retirement plans) of $14,443 and $30,623, respectively, and on the taxable distributions totaling $749,930 from the Fidelity IRA and the US Bancorp IRA.

Petitioners were born in 1955 and 1960, respectively.  The qualified retirement plan distributions and the IRA distributions

---

[14]  Petitioners do not argue that the stock was subject to a substantial risk of forfeiture.  Thus, the gain was recognized at the time petitioner acquired beneficial ownership of the stock (the time of exercise).  See sec. 83(a); Walter v. Commissioner, T.C. Memo. 2007-2.

were made in 2000, before petitioner or Mrs. Bhattacharyya attained age 59-1/2.[15]  Petitioners do not allege and the record does not reflect that the distributions were attributable to disability, or that the distributions otherwise qualify for an exception to the 10-percent additional tax.  In fact, petitioners state on brief that "Petitioners do understand that petitioners have to pay 10% penalty tax on the amount stated above * * * This is consistent with IRC section 72(t)(1)."  Therefore, we find that petitioners are liable for the 10-percent additional tax on the early distributions from Plan 15105 and Plan 15106 of $14,443 and $30,623, respectively, and on the early distributions totaling $749,930 from the Fidelity IRA and the US Bancorp IRA.

IV.  Itemized Deductions

Deductions are a matter of legislative grace and are allowable only as specifically provided by statute.[16]  See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Joseph v. Commissioner, T.C. Memo. 2005-169.  Itemized deductions allowed

---

[15]  Nor had petitioner attained age 55 so as to be eligible for an exception based on his separation from service.  See sec. 72(t)(2)(A)(v).

[16]  Generally, taxpayers also bear the burden of proving they are entitled to deductions.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Joseph v. Commissioner, T.C. Memo. 2005-169.  However, the resolution of this issue does not depend on which party bears the burden of proof, and we resolve this issue based on the preponderance of the evidence in the record.

for individual taxpayers are set forth in part VI and part VII of subchapter B, chapter 1, subtitle A of the Internal Revenue Code. See secs. 161-222.

Petitioners assert that they are entitled to itemized deductions totaling $1,118,870, as originally set forth in their Federal income tax return. Respondent concedes that petitioners are entitled to deduct the following expenses totaling $243,363 as itemized deductions: (1) $37,738, identified by petitioners as "Option Int" for "US Bank Corp.", as investment interest expenses under section 163; (2) $186,370, identified by petitioners as "Option Int" for "Merrill Lynch", as investment interest expenses under section 163; and (3) $19,255 of the $20,164 identified by petitioners as "Opt.int" for "Merrill Lynch", as investment interest expenses under section 163. Respondent also concedes that petitioners are entitled to deduct the following expenses as miscellaneous itemized deductions, totaling $84,581: (1) $71,657, identified by petitioners as "MLF" or "Merrill Lynch Fees", as expenses for the production of income under section 212; and (2) $12,924 of the $26,000 identified by petitioners as "US Bank Fees", as expenses for the production of income under section 212."[17] However, respondent

---

[17] Petitioners have not objected to respondents' characterization of these expenses as miscellaneous itemized deductions. An impact of this characterization is that such deductions are subject to sec. 67(a), which states: "In the case
(continued...)

argues that petitioners are not entitled to deduct the remaining expenses, including: (1) $909 of the $20,164 identified by petitioners as "Opt.int" for "Merrill Lynch"; (2) $13,076 of the $26,000 identified by petitioners as "US Bank Fees"; (3) $330,979 and $123,000, identified by petitioners as "Cash Pay" and described as "Merrill Lynch, to protect Taxable income"; and (4) $322,962, identified by petitioners as "Other" and described as "Merrill Lynch, to protect Taxable Income". Respondent raised these matters in the amendment to answer, not in the notice of deficiency, and now seeks an increased deficiency based in part on these new matters. Therefore, respondent bears the burden of proof with respect to these new matters. See Rule 142(a).

The "Opt.int" expense of $20,164 represents interest petitioners purportedly paid on margin loans issued by Merrill Lynch. Respondent concedes that petitioners are entitled to deduct this type of expense as an itemized deduction. However, respondent argues that a monthly account statement for petitioner's Merrill Lynch brokerage account shows that only $19,255 was paid. The monthly account statement cited by respondent shows that petitioner paid $19,255 in interest on margin loans issued by Merrill Lynch during the month of August.

----

[17](...continued)
of an individual, the miscellaneous itemized deductions for any taxable year shall be allowed only to the extent that the aggregate of such deductions exceeds 2 percent of adjusted gross income."

A yearend account statement shows that petitioners paid a total of $186,370 in interest on margin loans during 2000. The $19,255 appears to be a portion of the $186,370, which respondent already conceded petitioners were entitled to deduct. The record establishes that petitioners paid only $186,370 in interest to Merrill Lynch and did not pay an additional $20,164 as claimed on their return. Nevertheless, based on respondent's concession, we find that petitioners are entitled to an additional itemized deduction of $19,255.

The "US Bank Fees" expense of $26,000 represents bank fees petitioners purportedly paid to US Bancorp. Respondent concedes that petitioners are entitled to deduct this type of expense as a miscellaneous itemized deduction. However, respondent argues that petitioners are entitled to deduct only $12,924 in bank fees. The US Bancorp statements of account show that petitioners paid $12,924 in bank fees to US Bancorp in 2000. There is no evidence of a greater payment. The statements of account are sufficient for respondent to meet his burden of proof. Therefore, we find that petitioners are entitled to a miscellaneous itemized deduction of only $12,924 with respect to the US Bancorp fees.

The "Cash Pay" expenses of $330,979 and $123,000, and the "Other" expenses of $322,962, represent deposits made by petitioner into his Merrill Lynch brokerage account to exercise

his nonqualified stock options and to acquire other stock. The costs of acquiring stock, a capital asset, are capital in nature and are not currently deductible but instead are included in the stock's tax basis. See Woodward v. Commissioner, 397 U.S. 572, 575 (1970); Lychuk v. Commissioner, 116 T.C. 374, 388-389 (2001); Pappas v. Commissioner, T.C. Memo. 2002-127; see also secs. 1012, 1221(a). Therefore, we find that petitioners are not entitled to deduct the "Cash Pay" and "Other" expenses.

As described above, respondent met his burden of proving that petitioners are entitled to itemized deductions of only $243,363 and miscellaneous itemized deductions of only $84,581. However, petitioners argue that they are entitled to deduct the claimed expenses in full in 2000 because respondent allowed them to deduct similar expenses in 1999.[18] Petitioners' argument is without merit. Each taxable year stands alone, and respondent may challenge in a succeeding year what was condoned or agreed to in a former year. Rose v. Commissioner, 55 T.C. 28, 31-32 (1970); Jeanmarie v. Commissioner, T.C. Memo. 2003-337; Boatner

_____

[18] Petitioners also argue that respondent cannot challenge their itemized deductions because the Court admitted into evidence Exhibit 38-P. Exhibit 38-P was offered by petitioners as a summary of their arguments. Similar to their argument regarding Exhibit 42-R, discussed supra pp. 15-16, petitioners' argument is based on a misunderstanding of the Court's evidentiary ruling. The admission of Exhibit 38-P into evidence does not establish the truth of petitioners' assertions made in that exhibit, nor does it preclude respondent from contesting those assertions.

v. Commissioner, T.C. Memo. 1997-379, affd. 164 F.3d 629 (9th Cir. 1998). Respondent's allowance of certain itemized deductions in 1999 does not establish petitioners' entitlement to similar deductions in 2000.

For the above-stated reasons and to reflect respondent's concessions, we find that petitioners are entitled to itemized deductions of $243,363 and miscellaneous itemized deductions of $84,581.

## V. Alternative Minimum Tax

In the notice of deficiency, respondent determined that petitioners were liable for alternative minimum tax of $314,371. Petitioners' alternative minimum tax liability was triggered in part by the itemized deductions claimed on their Federal income tax return. Respondent concedes that, if petitioners are entitled to itemized deductions and miscellaneous itemized deductions only to the extent conceded by respondent, the alternative minimum tax will not apply. As found above, petitioners are entitled to itemized deductions and miscellaneous itemized deductions only to the extent conceded by respondent. Therefore, a determination regarding petitioners' alternative minimum tax liability is unnecessary.

## VI. Section 6651(a)(1) Addition to Tax

Section 6651(a)(1) imposes an addition to tax for failure to file a return on the date prescribed (in this case, April 16,

2001), unless the taxpayer can establish that such failure is due to reasonable cause and not willful neglect.  In the notice of deficiency, respondent asserted that petitioners were liable for a section 6651(a)(1) addition to tax of $38,837.  In the amendment to answer, respondent asserted an increased section 6651(a)(1) addition to tax of $100,571, based on the asserted increased deficiency.

Respondent bears the burden of production with respect to petitioners' liability for the section 6651(a)(1) addition to tax.  See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).  To meet his burden of production, respondent must come forward with sufficient evidence indicating that it is appropriate to impose the addition to tax.  See Higbee v. Commissioner, supra at 446-447.  Respondent has met his burden of production because the parties stipulated that petitioners' 2000 Federal income tax return was filed on May 19, 2003, more than 25 months after it was due.

Once respondent meets his burden of production, petitioners bear the burden of proving that their failure to timely file was due to reasonable cause and not willful neglect.[19]  To show

---

[19]  Respondent bears the burden of proof with regard to any increased deficiency.  See Rule 142(a).  However, the amount of the sec. 6651(a)(1) addition to tax is a computational matter based on the amount of tax due.  To the extent respondent bears the burden of proving an increased sec. 6651(a)(1) addition to tax, respondent has met this burden because, as discussed supra,
(continued...)

reasonable cause, petitioners must show that they "exercised ordinary business care and prudence and [were] nevertheless unable to file the return within the prescribed time".  Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.  For illness or incapacity to constitute reasonable cause, petitioners must show that they were incapacitated to a degree that they could not file their returns.  Williams v. Commissioner, 16 T.C. 893, 905-906 (1951); see, e.g., Joseph v. Commissioner, T.C. Memo. 2003-19 ("Illness or incapacity may constitute reasonable cause if the taxpayer establishes that he was so ill that he was unable to file.").

Petitioners argue that their failure to file was due to reasonable cause because petitioner was sick and because their return preparer had a brain tumor.  Petitioners have not introduced any evidence to corroborate these allegations, nor have they explained how long petitioner was sick, how serious his illness was, why Mrs. Bhattacharyya was unable to fulfill petitioners' filing obligations, or why they were unable to find another return preparer.  We find that petitioners did not have reasonable cause for their failure to file timely.  Therefore, we

---

[19](...continued)
the record shows that petitioners are liable for an increased deficiency.  See Howard v. Commissioner, T.C. Memo. 2005-144.

hold that petitioners are liable for a section 6651(a)(1) addition to tax.[20]

## VII. Conclusion

Based on the above, petitioners are liable for an increased deficiency in income tax, an increased addition to tax under section 6651(a)(1), and are not entitled to a refund.

In reaching our holdings, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered

under Rule 155.

---

[20] Because petitioners filed their return more than 25 months after it was due, the addition to tax under sec. 6651(a)(1) will be 25 percent of the amount required to be shown as a tax on the return. See sec. 6651(a)(1). The amount of the addition to tax should be determined by the parties as part of their Rule 155 computations.