146 T.C. No. 10

UNITED STATES TAX COURT

PETER L. AX AND BEVERLY B. AX, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 29078-14.                    Filed April 11, 2016.

P-H's LLC faced various risks. P-H formed SMS as a "captive insurance company", and in 2009 and 2010 LLC paid SMS premiums for coverage of the risks by SMS. LLC deducted the premiums, and the deductions were passed through to Ps' tax returns. After audit, the IRS disallowed the deductions and stated in the notice of deficiency (NOD): "You did not establish that the amount shown was (a) insurance expense, and (b) paid". Ps filed a petition in the Tax Court disputing the NOD, and R filed an answer that did not make any affirmative allegations as to the disallowed insurance expense deductions. After the case was stricken from a trial calendar and continued generally, R moved for leave to amend his answer to assert "that a) Petitioners' use, through solely controlled flow-through entities, of a micro-captive insurance arrangement in 2009 and 2010 lacked economic substance; and b) Amounts paid as premiums through the micro-captive arrangement were neither ordinary nor necessary" and to allege facts in support of those assertions. Ps oppose the motion for leave, citing <u>Mayo Foundation for Med. & Educ. Research v. United States</u>, 562 U.S. 44, 55 (2011), and arguing

that "the Administrative Procedure Act and Securities and Exchange Commission v. Chenery Corp., 318 U.S. 80 (1943) bar Respondent from raising new grounds to support his final agency action beyond those grounds originally stated in the notice of final agency action."

Held: Chenery may restrict a reviewing court from relying on reasons not considered by an agency in its determinations, but only as to matters that Congress has exclusively entrusted to the administrative agency, whereas Congress has expressly authorized the Tax Court to redetermine tax liabilities in a deficiency case. The enactment of the APA did not disturb the regime for deficiency litigation that Congress had previously enacted. Therefore, in a deficiency case, R may plead grounds not in the NOD. This allowance is not at odds with the uniform approach to judicial review of administrative action that is called for in Mayo Foundation.

Held, further, where no trial date has been set and ample time remains for discovery, no prejudice results to P from R's being allowed to add to his answer "new matter" (in this instance, lack of economic substance).

Held, further, the answer does not otherwise assert "new matter" under Rule 142(a)(1).

David D. Aughtry and Patrick J. McCann, for petitioners.

Randall G. Durfee, for respondent.

- 3 -

OPINION

GUSTAFSON, <u>Judge</u>: Pursuant to section 6212(a),[1] the Internal Revenue Service ("IRS") determined deficiencies in tax (and penalties under section 6662(a)) for petitioners Peter L. and Beverly B. Ax for 2009 and 2010. The principal adjustment giving rise to these deficiencies was the IRS's disallowance of deductions claimed for insurance expenses. Mr. and Mrs. Ax petitioned this Court, pursuant to section 6213(a), for redetermination of these deficiencies and penalties. Now before us is a motion filed by respondent, the Commissioner of the IRS, for leave to file an amendment to his answer in order "to affirmatively allege facts in support of [two] new issues".[2] Petitioners object to the motion, and their principal contentions are: (1) that administrative law bars the raising of both these new issues, (2) that the raising of the new issues unfairly prejudices petitioners, and (3) that one of the new issues is inadequately pleaded.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (26 U.S.C.; "the Code"), as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Like the Commissioner, we use the phrase "new issues" to describe the contentions in the proffered amendment to the answer without indicating thereby whether those new issues constitute "new matter" for purposes of Rule 142(a)(1). We address "new matter" in part III of the Discussion, below.

We will overrule petitioners' objections and will grant the Commissioner's motion

for leave to file an amendment to his answer.

## Background

Petitioners' insurance premium deductions

For purposes of respondent's motion for leave, we take the background of

this case to be as alleged by petitioners, as follows:

> Peter owns Phoenix Capital Management, LLC ("Phoenix")
> which bought KwikMed in 2001. Since that time, KwikMed has
> devoted substantial resources to developing a comprehensive online
> access tool to sell a limited class of legend drugs over the internet.
> Given the economic threat its innovative business model poses to the
> deeply-entrenched brick-and-mortar drug store industry, Peter and his
> company face the constant threat of litigation and administrative
> actions in various states. Unable to procure commercial coverage for
> much of that risk, Peter formed SMS Insurance Company, Ltd.
> ("SMS") to provide some of the needed coverage under Section
> 831(b) * * *.

> During 2009 and 2010, Phoenix obtained insurance from SMS
> across a broad range of risks including administrative action,
> computer operations and data, reputational damage, business
> income/expense, and commercial terrorism insurance policies
> covering Phoenix' internet business. For that coverage, Phoenix paid
> $1,200,000 in insurance premiums in 2009 and $1,128,340 for 2010.
> Phoenix deducted those premiums and passed the tax consequences
> through to the joint individual income tax returns which Peter and
> Beverly filed. The IRS audited those returns and issued a notice of
> deficiency, disallowing these deductions * * *.

The IRS's notice of deficiency

The IRS issued its notice of deficiency ("NOD") on September 9, 2014. The notice explained the disallowance of Phoenix's insurance deductions by stating:

> We adjusted your return in accordance with the examination results of the S corporation return ([Phoenix's] Form 1120S) of which you are a shareholder.
>
> See the attached Forms 4505-A [sic] for Medit Marketing Inc. and Phoenix Capital Management, LLC.

The attached Form 4605, "Examination Changes--Partnerships, Fiduciaries, Small Business Corporations, and Domestic International Sales Corporations", for Phoenix reflected the disallowance of "Insurance expenses" of $1,200,000 for 2009 and $1,128,340 for 2010. An attached Form 886A, "Explanation of Items", for Phoenix, further explained:

> Since you did not establish that the amount shown was (a) insurance expense, and (b) paid, the amount is not deductible.

In addition to these Phoenix insurance expenses, which petitioners explicitly address in their opposition, the NOD also disallowed a 2010 deduction of a smaller amount--$65,000--for "Insurance Expenses" claimed by Medit Marketing Inc. ("Medit"), another entity owned by petitioners, the expenses of which flowed through to their return. The Medit disallowance is explained thus on Form 886A:

Since you did not establish that a part of the insurance expense claimed on your tax return was ordinary and necessary to your business, we have disallowed the aggregate amount shown. Further it is determined that the amounts disallowed were not paid to an insurance company and that they were not paid for insurance.

Tax Court proceedings

On December 8, 2014, petitioners timely filed their petition in this Court. Echoing the above-quoted language in the Form 886A attached to the NOD, the petition alleges (in paragraph 4(h) and (i)) that, in issuing the NOD, the Commissioner erred as to each of the two years in issue by disallowing the Phoenix insurance expense deductions and "[b]y asserting that the * * * [amount] paid * * * for insurance was not somehow an insurance expense and not paid and therefore not deductible". The petition alleges in paragraph 4(n) that the IRS erred with regard to the disallowance as to Medit for 2010.

The Commissioner filed his answer on January 29, 2015. The answer generally denied the allegations in the petition, but it did not make any affirmative allegations as to the disallowed insurance expense deductions. Petitioners' counsel provided respondent's counsel with substantial information about the case in May and July 2015.

On September 4, 2015, the Commissioner filed a motion for leave to file an amendment to his answer. Specifically, the Commissioner moves--

pursuant to Tax Court Rule 41(a), for leave to file an Amendment to Answer to affirmatively allege facts in support of new issues. Specifically, in the Amendment to Answer, lodged with the Court at the same time as the filing of this motion, respondent raises the issue of whether petitioners' use of the micro-captive insurance arrangement lacked economic substance. Additionally, out of an abundance of caution, respondent affirmatively alleges that premiums that funded the micro-captive arrangement were neither ordinary nor necessary expenses, even though this issue is implicit in the notice of deficiency.

\* \* \* \* \* \* \*

8. Respondent acknowledges that he will bear the burden of proof with respect to the micro-captive arrangement's lack of economic substance.

9. Disallowing the insurance related deductions because such expenses were neither ordinary nor necessary, however, is implicit in the notice of deficiency; respondent, however, makes the related affirmative allegations out of an abundance of caution. Accordingly, respondent does not bear the burden of proving that such expenses were ordinary and necessary.

10. Respondent continues to maintain that the micro-captive insurance arrangement does not constitute insurance for federal income tax purposes, see Helvering v. LeGierse, 312 U.S. 531 (1941), as stated in the notice of deficiency.

The general allegations that the Commissioner asks leave to plead are that--

a) Petitioners' use, through solely controlled flow-through entities, of a micro-captive insurance arrangement in 2009 and 2010 lacked economic substance; and

b) Amounts paid as premiums through the micro-captive arrangement were neither ordinary nor necessary.

And in support of those general allegations, the amendment to the answer includes 35 paragraphs (identified as "a" through "ii") that allege, among other things: that the marketing of the micro-insurance arrangement was "for the sole purpose of reducing petitioners' taxable income"; that risks purportedly covered included reputational damage, damage from a competitor entering the market, costs related to tax audits, climate change, and loss of key customers; that some of the risks involved were non-insurable; that the payments of "terrorism insurance" premiums by Phoenix to third parties and by third parties to SMS were reciprocal; that "the premiums were grossly in excess of the fair market value of comparable coverage"; that "[t]he payment of premiums by * * * [Phoenix] to SMS in 2009 and 2010 had no economic effect other than reducing petitioners' income tax liability"; and that "[p]etitioners did not intend for premiums paid * * * to have any economic effect other than generating income tax deductions."

Petitioners oppose the Commissioner's motion for leave, and they summarize their contentions as follows:

> Petitioners object to the granting of leave essentially on three grounds. First, the Administrative Procedure Act ["APA"] bars an agency's attempt to bolster a final agency action on a post hoc basis. Second, Respondent's Reply effectively admits he has no cause for the delay in leveling the vague factual allegations which perpetuate the prejudice by failing to provide meaningful notice. Third, both the "economic substance" and "ordinary and necessary" grounds would

constitute "new matters" under TAX COURT RULE 142(a)(1), which invoke the TAX COURT RULE 36(b) heightened pleading standards the Amendment fails to meet.

We now address these three contentions.

Discussion

I.  In a deficiency case under section 6213(a), administrative law does not bar the Commissioner from asserting grounds not stated in the agency's notice of deficiency.

Petitioners summarize their administrative law contention by stating:

Since the Supreme Court [in Mayo Foundation for Med. & Educ. Research v. United States, 562 U.S. 44, 55 (2011)] rejected the concept of "tax exceptionalism," the Administrative Procedure Act and Securities and Exchange Commission v. Chenery Corp. [Chenery I], 318 U.S. 80 (1943) bar Respondent from raising new grounds to support his final agency action beyond those grounds originally stated in the notice of final agency action."

This argument distorts Mayo Foundation, Chenery I,[3] and the APA.

---

[3]Petitioners characterize SEC v. Chenery Corp. (Chenery I), 318 U.S. 80 (1943), and SEC v. Chenery Corp. (Chenery II), 332 U.S. 194, 196 (1947), as "the foundational APA opinions". Since Chenery I predates the APA, we understand this statement to mean that Chenery I is part of the administrative law "foundation" of the APA.

A.    The Chenery I principle does not apply to deficiency cases.

1.    The actual holding in Chenery I

Chenery I, which pre-dates the APA, does restrict the Government's ability to defend agency action on the basis of grounds not actually cited by the agency, but its holding is narrower than petitioners' argument presumes. Petitioners accurately quote Chenery I when they argue:

> Chenery mandates "the orderly functioning of the process of review requires that the grounds upon which the administrative agency acted [be] clearly disclosed and adequately sustained. 'The administrative process will best be vindicated by clarity in its exercise.'" Chenery Corp., 318 U.S. at 94, quoting Phelps Dodge Corp. v. National Labor Relations Board, 313 U.S. 177, 197 (1941). Also, "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." Id. at 87. Therefore, Respondent cannot add post-hoc grounds to support the final agency action in the notice of deficiency.

However, petitioners' "Therefore" does not at all follow, because they have erred in selectively extracting statements from Chenery I. That case does not apply to all agency action that is subject to judicial review. Instead, the opinion plainly states:

> If an order is valid only as a determination of policy or judgment which the agency alone is authorized to make and which it has not made, a judicial judgment cannot be made to do service for an administrative judgment. For purposes of affirming no less than reversing its orders, an appellate court cannot intrude upon the

domain which Congress has <u>exclusively entrusted to an administrative agency</u>.  [<u>Id.</u> at 88; emphasis added.]

That is, where Congress has committed an action solely to agency discretion,[4] a reviewing court can only review the decision that the agency made; a court cannot perform a pseudo-review of a hypothetical decision that was not made by the agency but that the court might have made if it were the agency.  <u>Chenery I</u> says nothing about circumstances in which Congress has authorized a court to make its own determinations--which is precisely the circumstance of the Tax Court's jurisdiction over deficiency cases, as we now show.

### 2.    The statutes governing deficiency litigation

The IRS is authorized to "determine[]" a deficiency in a taxpayer's income tax and to send the taxpayer notice of that deficiency.  Sec. 6212(a).  The taxpayer is then entitled to "file a petition with the Tax Court for a <u>redetermination</u> of the deficiency."  Sec. 6213(a) (emphasis added).  That is, the IRS "determines"; and the Tax Court does not merely review but "redetermin[es]".

Moreover, the scope of a deficiency case may be expanded (beyond the notice of deficiency) in the IRS's favor, pursuant to section 6214(a):

---

[4]<u>See also</u> <u>Chenery II</u>, 332 U.S. at 196 ("[A] reviewing court, in dealing with <u>a determination or judgment which an administrative agency alone is authorized to make</u>, must judge the propriety of such action solely by the grounds invoked by the agency." (Emphasis added.)).

[T]he Tax Court shall have jurisdiction to <u>redetermine</u> the correct amount of the deficiency <u>even if the amount so redetermined is greater</u> than the amount of the deficiency, notice of which has been mailed to the taxpayer, and to determine whether any additional amount, or any addition to the tax should be assessed, if claim therefor is asserted by the Secretary at or before the hearing or a rehearing.  [Emphasis added.]

By the same token, the scope of a deficiency case may also be expanded (beyond the notice of deficiency) in the taxpayer's favor, pursuant to section 6512(b)(1):

Sec. 6512(b) Overpayment <u>Determined</u> by Tax Court.--

(1)    Jurisdiction to <u>determine</u>.-- * * * [I]f the Tax Court finds that there is no deficiency and further finds that the taxpayer has made an overpayment of income tax for the same taxable year, * * * in respect of which the Secretary determined the deficiency, or finds that there is a deficiency but that the taxpayer has made an overpayment of such tax, the Tax Court <u>shall have jurisdiction to determine</u> the amount of such overpayment * * *.  [Emphasis added.]

Thus, the statutes plainly provide that Tax Court deficiency litigation may extend beyond issues raised in the notice of deficiency.[5]

Also at odds with petitioners' attempted application of <u>Chenery I</u> to Tax Court review of an NOD is section 7522(a).  That section requires that an NOD "shall describe the basis for * * * the tax due"; but the consequence when the

---

[5]The jurisdiction to determine a deficiency greater than in the notice has existed since 1924, and jurisdiction to determine overpayments has existed since 1926, <u>see</u> Ewing v. Commissioner, 122 T.C. 32, 38 (2004), <u>vacated</u>, 439 F.3d 1009 (9th Cir. 2006)--i.e., since long before Congress enacted the APA (discussed in part I.B below) in 1946.

"basis" is not "describe[d]" does not bear out petitioners' position. Rather, "[a]n inadequate description under the preceding sentence shall not invalidate such notice." Id.

Furthermore, section 7491(a) (entitled "Burden Shifts Where Taxpayer Produces Credible Evidence") implies that the taxpayer generally has the burden of proof and explicitly provides that the burden sometimes "shifts"--i.e., that the IRS "shall have the burden of proof" in certain circumstances. Sec. 7491(a)(1). Section 7491(c) imposes on the IRS "the burden of production in any court proceeding with respect to the liability of any individual for any penalty". The Internal Revenue Code thus reflects Congress's intention that the Tax Court will decide deficiency cases not by reviewing the agency's determinations for abuses of discretion but by deciding issues according to the evidence. Consequently, the Chenery I principle simply has no application to this deficiency case.

B. The APA does not support petitioners' argument.

1. Deficiency litigation pre-dated and survived the APA.

The Administrative Procedure Act created norms for judicial review of agency action. See 5 U.S.C. secs. 701-706 (2006) (entitled "Judicial Review"). But in enacting the APA in 1946, Congress did not write on an entirely blank slate. Rather, for more than 20 years, IRS notices of deficiency had been reviewed

by this Court's predecessors under the statutes from which the current section 6213(a) was derived, and a significant body of jurisprudence as to deficiency case jurisdiction had developed.  Nonetheless, petitioners cite the APA to argue as follows:

> The APA separately imposes upon the reviewing court, in mandatory terms, the obligation "to hold unlawful and set aside any agency action, finding[s], and conclusion[s] found to be ... unwarranted by the facts to the extent the facts are subject to trial de novo by the reviewing Court."  5 U.S.C. § 706(2)(f).  Here too, the Petition contends that the findings and conclusions in the Notice are unwarranted by the facts.  The "agency action, finding, and conclusion" are disputed--not some "post-hoc rationalization."

Thus, petitioners acknowledge that deficiency cases "are subject to trial de novo", see 5 U.S.C. sec. 706(2)(F); but they contend that in that de novo trial the Tax Court must address only "the agency action, findings, and conclusions", see id., i.e., as reflected in the NOD.

Even if they otherwise reasonably construe 5 U.S.C. sec. 706(2)(F), petitioners overlook a more basic APA provision that contradicts their position.  Title 5 U.S.C. sec. 703, "Form and Venue of Proceeding", provides:

> The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction.  If no special statutory

<u>review proceeding is applicable</u>, the action for judicial review may be brought against the United States, the agency by its official title, or the appropriate officer. <u>Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law</u>, agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement. [Emphasis added.]

A deficiency case is one such "special statutory review proceeding", and the Tax Court is the "court specified by statute". Before the APA, "prior, adequate, and exclusive opportunity for judicial review"[6] of a notice of deficiency was provided in the predecessor statutes to section 6213(a)--i.e., in section 272(a)(1) of the Internal Revenue Code of 1939, as in effect when the APA was enacted in 1946. By its terms, then, 5 U.S.C. sec. 703 thus left undisturbed the deficiency case regime described above in part I.A.2.[7] <u>See</u> <u>Ewing v. Commissioner</u>, 122 T.C. 32, 50-51 (2004) (Thornton, J., concurring), <u>vacated</u>, 439 F.3d 1009 (9th Cir. 2006). When the Internal Revenue Code was revised and reenacted in 1954, the

---

[6]<u>See also</u> 5 U.S.C. sec. 704 ("Agency action <u>made reviewable by statute</u> and final agency action <u>for which there is no other adequate remedy in a court</u> are subject to judicial review."). Section 6213(a) is the statute that makes an NOD "reviewable", and there is therefore an "adequate remedy" for errors in agency action reflected in an NOD.

[7]<u>See also</u> 5 U.S.C. sec. 702 ("Nothing herein * * * affects * * * the power or duty of the court to * * * deny relief on any other appropriate legal or equitable ground". Thus, nothing in the APA affects the power of the Tax Court to deny a taxpayer in a deficiency case relief on "other appropriate legal * * * ground[s]", including those outside the NOD that are raised pursuant to section 6214(a) by the Commissioner or by section 6512(b)(1) by the taxpayer.

deficiency case regime remained (i.e., in section 6213(a), the numbering that has remained to the present).

As the U.S. Supreme Court stated in Bowen v. Massachusetts, 487 U.S. 879, 903 (1988): "When Congress enacted the APA to provide a general authorization for review of agency action in the district courts, it did not intend that general grant of jurisdiction to duplicate the previously established special statutory procedures relating to specific agencies." To the same effect, the U.S. Court of Appeals for the Fourth Circuit had previously held in a deficiency case that "the Tax Court is not subject to the Administrative Procedure Act." O'Dwyer v. Commissioner, 266 F.2d 575, 580 (4th Cir. 1959), aff'g 28 T.C. 698 (1957).

2.      Deficiency litigation has always included "new matter".

Petitioners' proposal--that a deficiency case be confined to issues in the NOD--would be a radical innovation that not only is at odds with the statutes discussed above but that also would change longstanding practice. Under Rule 142(a)(1), "The burden of proof shall be upon the petitioner, except as otherwise provided by statute or determined by the Court; and except that, in respect of any new matter * * * pleaded in the answer, it shall be upon the respondent." (Emphasis added.) The rules have so provided as to "new matter" since soon after deficiency litigation first began to be held in this Court's predecessor, the Board of

Tax Appeals ("BTA").[8]  This provision as to the burden of proof on "new matter"

persisted when the BTA became the Tax Court of the United States in 1942[9]--and

it was therefore in effect when Congress enacted the APA.  The "new matter"

provision persisted in 1969 after the Court was reconstituted as an Article I court

to be known as the United States Tax Court.[10]  When Congress in 1998 addressed

tax litigation procedure by enacting section 7491 (entitled "Burden of Proof") to

shift the burden of proof in some circumstances, the Tax Court rules then

provided, as they had for decades and still do, that burden of proof on "new

matter" was on the respondent.[11]

Of course, Congress has the power to override the Tax Court's rules and to

provide, however radically, that "new matter" could not be litigated in a deficiency

---

[8]See 2 B.T.A. 1359, 1364 (Rule 30:  "The burden of proof shall be upon the petitioner, except that in respect of any new matter of fact pleaded in his answer, it shall be upon the respondent").

[9]See Cohen v. Sec'y of War, 7 T.C. 1002, 1010 (1946) ("Rule 32 provides: 'The burden of proof shall be upon the petitioner, except as otherwise provided by statute, and except that in respect of any new matter pleaded in his answer, it shall be upon the respondent'").

[10]See Rule 142(a), 60 T.C. 1057, 1133:  ("The burden of proof shall be upon the petitioner, except as otherwise provided by statute or determined by the Court; and except that, in respect of any new matter * * * pleaded in his answer, it shall be upon the respondent") (Emphasis added.).

[11]See Rule 142(a), 109 T.C. 507, 617.

case.  But the question that petitioners' argument poses is whether Congress

actually did so in enacting the APA.  Nothing in the statute requires or even

suggests that intention.

     C.     Mayo Foundation does not support petitioners' argument.

     As petitioners point out, the Supreme Court did state in Mayo Foundation,

562 U.S. at 55, that--

> we are not inclined to carve out an approach to administrative review
> good for tax law only.  To the contrary, we have expressly
> "[r]ecogniz[ed] the importance of maintaining a uniform approach to
> judicial review of administrative action."  Dickinson v. Zurko, 527
> U.S. 150, 154, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999).

But the preceding discussion (in parts I.A and I.B) shows that, in looking beyond

the NOD in a deficiency case, the Tax Court does not violate administrative law

principles or conventional standards of judicial review.

     Mayo Foundation says little that is pertinent to the pending motion.  That

case involved a dispute about the deference that a court should accord to agency

regulations when construing an ambiguous statute, and the case resolved a

longstanding dispute about whether tax regulations should be given the deference

articulated by the Supreme Court for agency regulations generally in Chevron,

U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837 (1984), or should instead

be reviewed under the less deferential standard previously employed by the

Supreme Court in its review of tax regulations in Nat'l Muffler Dealers Ass'n, Inc. v. United States, 440 U.S. 472 (1979). The Court held in Mayo Foundation, 562 U.S. at 55, that "[t]he principles underlying our decision in Chevron apply with full force in the tax context", so that a court should accord Chevron deference to regulations in the tax context, just as it would in any other agency context.

The issue now before us, however, does not involve any dispute about the deference to be accorded to agency regulations, so Mayo Foundation has no direct relevance here. Even if Mayo Foundation can fairly be cited as a swat at "tax exceptionalism" (a phrase not used in Mayo Foundation), and if Mayo Foundation is construed not merely as a holding on deference to regulations but also as support for the broader proposition that judicial review of IRS action is subject to general administrative law principles, that broader proposition is insufficient to achieve here the result that petitioners seek.

The Supreme Court did not, by the language in Mayo Foundation quoted above, impose a single one-size-fits-all paradigm for standard and scope of review for all types of cases involving disputes with agencies. Rather, the distinctions explicit in 5 U.S.C. sec. 703 (between circumstances in which "no special statutory review proceeding is applicable" and circumstances, such as the present deficiency case, in which there is a "special statutory review proceeding relevant

to the subject matter in a court specified by statute") plainly survive <u>Mayo Foundation</u>. Likewise, the distinctions explicitly articulated in <u>Chenery I</u> (between matters committed uniquely to agency discretion and matters that a court may determine itself) survive <u>Mayo Foundation</u>.

Consequently, the Tax Court, when it considers, in a deficiency case, issues and arguments not stated in the IRS's NOD, is not proceeding at odds with the authorities that petitioners have cited.

II. <u>Petitioners do not show that unfair prejudice would result from the Commissioner's amendment of his answer.</u>

In the alternative, petitioners contend that even if the Commissioner is otherwise permitted to plead in an answer contentions that were not in a notice of deficiency, the Commissioner should not be permitted to so plead in this instance in an amendment to the answer, because of unfair prejudice that would result.

A. <u>Amendment of pleadings and prejudice</u>

The Commissioner raises his two new issues ("economic substance" and "ordinary and necessary") not in his original answer filed January 29, 2015, nor by an amendment of right made 30 days thereafter, <u>see</u> Rule 41(a) (second sentence), but instead by an amendment to answer submitted under a motion for leave to

amend that was filed on September 4, 2015, about seven months after the original answer.

Amendment of pleadings is addressed in Rule 41(a), which (as relevant here) provides: "a party may amend a pleading only by leave of Court * * *, and leave shall be given freely when justice so requires." It is within our discretion to allow respondent to amend his answer, Estate of Quick v. Commissioner, 110 T.C. 172, 178 (1998), but petitioners maintain we should not exercise our discretion to allow the amendment requested here because (they say) granting the motion would prejudice them.

Central to petitioners' opposition to the motion for leave to amend is their argument that the two issues in the NOD (i.e., whether "the amount shown was (a) insurance expense, and (b) paid") are very simple issues, in contrast to two very complicated new issues now proposed to be added (i.e., whether the arrangement "lacked economic substance" and whether the amounts paid "were neither ordinary nor necessary"). Petitioners now repeatedly characterize the NOD-- which disputes only "(a) insurance expense, and (b) paid"--as raising only "a straightforward expense substantiation dispute" on which petitioners could easily prevail with "the mere proof of an insurance expense payment". Such proof, they say, could be decisively made with available documents: "The checks, invoices,

and policies substantiate that insurance payment." In petitioners' view, "'business purpose' evidence * * * would not be needed or relevant to substantiation of an insurance payment." The addition of the issues of "economic substance" and "ordinary and necessary", petitioners contend, would prejudice them.

B.     Analysis

It is true that prejudice to the non-moving party is one of the reasons to disallow an amendment to the movant's pleadings,[12] but we reject petitioners' contention of prejudice here for two reasons:

1.     The relation of the new issues to the existing issues

First (but less important) we are not at all persuaded that the NOD is as simple as petitioners assert. The question whether an arrangement is "insurance"

---

[12]Reasons not to allow amendment of a pleading include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962), quoted in Estate of Strangi v. Commissioner, 293 F.3d 279, 281 (5th Cir. 2002), aff'g in part, rev'g in part 115 T.C. 478 (2000); see also Estate of Quick v. Commissioner, 110 T.C. 172, 178 (1998). Petitioners do complain of the Commissioner's supposed seven-month "delay" in pleading the new issues in early September 2015, but the Commissioner shows that the petitioners' provision of information about their contentions in May and July 2015 was a reasonable occasion for the Commissioner in September 2015 to clarify his contentions. In the absence of actual prejudice to petitioners, the timing of the Commissioner's motion for leave does not reflect culpable delay that would warrant denying his motion.

can be highly complex.[13]  And the question whether a deduction has been

substantiated often depends on much more than proving the existence of a

document that purports to impose a liability and proving the fact that money

changed hands.  This is especially true in the case of payments allegedly made to a

related person or entity.  The quintessence of insurance is the shifting of risk,[14] and

where an alleged insurance premium is paid to a "captive" entity owned by the

very person who wants the coverage and makes the payment, the question

naturally arises whether risk has actually been shifted--a question not really

---

[13]As we recently explained in R.V.I. Guar. Co., Ltd. & Subs. v. Commissioner, 145 T.C.__, __ (slip op. at 26-27) (Sept. 21, 2015):

> The meaning of * * * ["insurance"] for Federal income tax purposes has thus been developed chiefly through a process of common-law adjudication.  In the seminal case addressing this subject, the United States Supreme Court noted that '[h]istorically and commonly insurance involves risk-shifting and risk-distributing.'  Helvering v. Le Gierse, 312 U.S. 531, 539 (1941).  In addition to requiring risk transfer and risk distribution, the courts have considered whether the transaction constitutes insurance 'in its commonly accepted sense' and whether the risk transferred is an 'insurance risk.'  E.g., Black Hills Corp. v. Commissioner, 101 T.C. 173, 182 (1993), aff'd, 73 F.3d 799 (8th Cir. 1996).  These factors establish a framework for determining 'the existence of insurance for Federal tax purposes.'  AMERCO & Subs. v. Commissioner, 96 T.C. 18, 38 (1991), aff'd, 979 F.2d 162 (9th Cir. 1992).

[14]See R.V.I. Guar. Co. Ltd. & Subs. v. Commissioner, 145 T.C. at __, (slip op. at 27).

answered just by showing an insurance policy. And since a payment to one's own entity can sometimes be the mere moving of money from one pocket to another, the question whether a premium has really been "paid" to a captive insurer is not really answered just by showing a canceled check. Thus, if an NOD denies a deduction for premiums paid to a captive insurer because (the IRS says) "you did not establish that the amount shown was (a) insurance expense, and (b) paid", then that notice has raised much more than "a straightforward expense substantiation dispute".

### 2. Unfair timing

Second, and more important, "prejudice", for this purpose, does not mean mere disadvantage. See, e.g., Bhattacharyya v. Commissioner, T.C. Memo. 2007-19, 93 T.C.M. (CCH) 711, 713-714 (2007) (allowing an amendment to the answer that increased the deficiency by a half-million dollars). If it did, then the Commissioner's interests would be "prejudiced" by the filing of every petition; and a taxpayer's interests would be "prejudiced" by the filing of even the original answer (since he would have preferred a confession of judgment or a default, and an answer that resists the petition would be "prejudicial"). But it is not so.

The question of prejudice under Rule 41(a) is not simply whether an amended pleading that includes the proposed new issues would make the case

harder or more expensive for the other party than a pleading that lacks those issues. Rather, the question is whether the addition of those new issues by a later amendment, rather than by inclusion in the initial pleading, works an unfair disadvantage to the other party. Where an amendment is requested on the eve of trial, so that the other party is deprived of fair notice and an opportunity to prepare, prejudice may be obvious. In such an instance, one could not say (in the language of Rule 41(a)) that "justice * * * requires" that leave be granted to amend the pleading. Justice might require the opposite. However, where instead the non-moving party is given adequate time (such as by a continuance of trial) to respond to the new pleading, there is no prejudice (or any prejudice is cured). See Church of Scientology of Cal. v. Commissioner, 83 T.C. 381, 469 (1984), aff'd, 823 F.2d 1310 (9th Cir. 1987).

Because no trial date has yet been set, petitioners have ample time to prepare to resist the Commissioner's new contentions. We see no prejudice to petitioners in this circumstance. Petitioners do complain about "surprise" and lack of "fair notice", but the gist of their argument is not with the timing of the raising of the arguments but with the supposed vagueness of the amended answer--an issue properly addressed in connection with their third contention, discussed in part III below.

III.    The Commissioner's amendment to his answer is adequate
        under Rule 36(b).

The Commissioner's motion for leave proposes an amendment to his answer that raises two new issues not in the NOD--"economic substance" and "ordinary and necessary".[15]  The motion admits (at para. 8) that the Commissioner "will bear the burden of proof with respect to the micro-captive arrangement's lack of economic substance" (because, though the motion does not spell it out, he evidently acknowledges that the issue is "new matter" under Rule 142(a)(1)).  Petitioners contend, however, that both new issues are new matter for which the Commissioner bears the burden of proof; and in a sur-reply opposing the motion, petitioners further contend that under Rule 36(b) the proposed amended answer is therefore deficient in its pleading of the "ordinary and necessary" issue.

Rule 142(a)(1) provides that "in respect of any new matter * * * pleaded in the answer," the burden of proof "shall be upon the respondent."  Rule 36(b) provides that "the answer shall contain a clear and concise statement of every ground, together with the facts in support thereof on which the Commissioner

---

[15]In fact, as we note above, the NOD did disallow a 2010 deduction of $65,000 claimed by Medit by explaining that petitioners "did not establish that a part of the insurance expense claimed on your tax return was ordinary and necessary to your business".  This amounted to less than 3% of the captive insurance premiums disallowed in the NOD.

relies and has the burden of proof." Thus, if an issue is "new matter" under Rule 142(a)(1), then under Rule 36(b) the answer must contain "the facts in support thereof".

The NOD asserts that petitioners "did not establish that the amount shown was (a) insurance expense, and (b) paid". (Emphasis added.) The motion for leave would add the assertion that "[a]mounts paid as premiums through the micro-captive arrangement were neither ordinary nor necessary". The Commissioner's position is that the "ordinary and necessary" issue is "implicit" in the NOD's "insurance" issue[16] and that as a consequence it is not "new matter" under Rule 142(a)(1) to which the pleading requirement of Rule 36(b) applies. We agree--and petitioners' own submissions bear out the Commissioner's contention. Petitioners state:

> Three times within the past two years, this Court found that insurance premiums paid to a captive insurance company[17] constituted "ordinary and necessary business expenses". See Rent-A-Center, Inc. v. Commissioner, 142 T.C. [1] (2014); Securitas Holdings, Inc. v. Commissioner, T.C. Memo. 2014-225 (October 29,

---

[16]The Commissioner's motion for leave states (in para. 9): "Disallowing the insurance related deductions because such expenses were neither ordinary nor necessary, however, is implicit in the notice of deficiency; respondent, however, makes the related affirmative allegations out of an abundance of caution."

[17]The third of these three cases--R.V.I. Guar. Co., Ltd. & Subs. v. Commissioner, 145 T.C. __ did not involve a "captive" insurance company.

2014); and <u>RVI v. Commissioner</u>, 145 T.C. [No.] 9 (September 21, 2015).  Those three cases * * * answered the "ordinary and necessary business expense" question by focusing on whether the policies:  (i) covered insurable risk, (ii) shifted risk from the insured to the insurer, and (iii) distributed risk among unrelated parties, and (iv) appeared to be insurance within common usage.

Thus, petitioners' description of the "ordinary and necessary" issue in the captive insurance context overlaps very substantially with the description of the "insurance" issue in <u>R.V.I. Guar. Co., Ltd. & Subs. v. Commissioner</u>, 145 T.C. __, __ (slip op. at 34 n.13) (Sept. 21, 2015).  Because of petitioners' truncated view of the NOD's dispute about "insurance", they fail to see this overlap.  But when the NOD's assertion that petitioners "did not establish that the amount shown was * * * <u>insurance expense</u>" is construed with reasonable breadth,[18] it is indeed broad enough to encompass the later assertion that the amount was "neither ordinary nor necessary".

---

[18]<u>See</u> <u>Abatti v. Commissioner</u>, 644 F.2d 1385, 1390 (9th Cir. 1981) ("[I]f a deficiency notice is broadly worded and the Commissioner later advances a theory not inconsistent with that language, the theory does not constitute new matter, and the burden of proof remains with the taxpayer"), <u>rev'g</u> T.C. Memo. 1978-392.

Consequently, the "ordinary and necessary" issue is not "new matter" and is not subject to the pleading requirement of Rule 36(b) as to "facts in support thereof".[19]

To reflect the foregoing,

An appropriate order will be issued.

---

[19]By holding that the "ordinary and necessary" issue is not subject to the pleading requirement of Rule 36(b), we do not by any means foreclose petitioners from using discovery, informal and formal, to learn the details of the Commissioner's contentions and the facts known to him that are relevant to those contentions.