# United States Tax Court

T.C. Memo. 2022-71

TBL LICENSING LLC f.k.a. THE TIMBERLAND COMPANY, AND
SUBSIDIARIES (A CONSOLIDATED GROUP),
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent[1]

————

Docket No. 21146-15.                           Filed July 12, 2022.

————

P and R each moved for summary judgment on issues regarding the application of I.R.C. § 367(d), which they presented as the sole issues in the case requiring resolution. The Court resolved those issues in *TBL Licensing LLC & Subs. v. Commissioner*, No. 21146-15, 158 T.C. (Jan. 31, 2022). In March 2022, more than 6½ years after filing its Petition, P moved for leave to amend its Petition to assert a claim for a research credit under I.R.C. § 41. R opposes P's Motion.

*Held*: Whether justice requires granting a motion for leave to amend a pleading under Rule 41(a) depends on the facts and circumstances of the particular case; no one factor (such as the presence or absence of prejudice to the nonmoving party) is determinative.

*Held*, *further*, when prejudice to the nonmoving party is taken into account, the relevant analysis is not limited to the incremental burden the nonmovant would bear as a result of the delay in consideration of the issue;

---

[1] This Memorandum Opinion supplements our prior Opinion *TBL Licensing LLC & Subs. v. Commissioner*, No. 21146-15, 158 T.C. (Jan. 31, 2022).

2

**[*2]** the absolute burden (on both the nonmovant and the Court) can also be considered.

*Held, further*, P's failure to offer any explanation for its lengthy delay in raising its claim to a research credit provides a sufficient ground, by itself, for denying P's motion; that consideration of P's claim could impose a considerable burden on R and the Court that would likely be greater than if P had raised its claim at the outset of the case provides even further grounds for the conclusion that justice does not require granting P's motion.

_____

2

*James P. Fuller, Kenneth B. Clark, Larissa B. Neumann, Julia V. Ushakova-Stein, Sean P. McElroy, Rajiv Madan*, and *Nathan P. Wacker*, for petitioner.

*John E. Budde, Gretchen A. Kindel, Kimberly B. Tyson*, and *James M. Cascino*, for respondent.

SUPPLEMENTAL MEMORANDUM OPINION

HALPERN, *Judge*: This case is before us on petitioner's Motion for Leave to Amend Its Petition (Motion for Leave or Motion). For the reasons explained below, we will deny petitioner's Motion.

*Background*

In our prior Opinion in the case, we resolved in respondent's favor the two issues that the parties had assured us, in respective Motions for Summary Judgment, were the only issues for decision. In particular, we concluded that (1) petitioner is required to recognize ordinary income for its taxable year ended September 23, 2011, under section 367(d)(2)(A)(ii)(II)[2] as a result of a constructive transfer of intangible property to a foreign corporation and (2) in computing the amount of income recognized, the value of the transferred properties had to be

_____

[2] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect for 2011, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect for 2011, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*3] determined on the basis of their actual useful lives, without regard to a 20-year limitation provided, for other purposes, in Temporary Treasury Regulation § 1.367(d)-1T(c)(3). On February 9, 2022, we entered an Order and Decision that purported to sustain the deficiency that respondent had determined in a notice of deficiency for the taxable year in issue.

On March 4, 2022, respondent filed a Motion asking us to vacate the February 9th Order and Decision and replace it with one that states the amount of the upheld deficiency (rather than simply cross-referencing the notice of deficiency). Petitioner opposed respondent's Motion to Vacate, alleging that the deficiency should be reduced by a research credit petitioner claimed under section 41 in an amended return petitioner apparently filed in June 2015, after respondent had issued the notice of deficiency but before petitioner had petitioned this Court for redetermination of the deficiency.[3] Petitioner had not made any claim to a research credit for the taxable year in issue in its Petition or at any other time before March 8, 2022, when petitioner responded to respondent's Motion to Vacate.

In an order dated March 14, 2022, we granted in part respondent's Motion to Vacate in that we vacated and set aside so much of our February 9 Order and Decision as sustained the deficiency determined in the notice of deficiency. We refrained from entering a new Order and Decision to give petitioner the opportunity to make "an appropriate motion."

Petitioner filed its Motion for Leave, seeking to raise its claim to a research credit, on March 25, 2022. Respondent objects to petitioner's Motion.

*Discussion*

## I. *Standards for Amending Pleadings*

As we explained in *Markwardt v. Commissioner*, 64 T.C. 989, 997 (1975), we "will not consider issues which have not been pleaded." Petitioner implicitly acknowledges our long-established practice by

---

[3] The parties stipulated that "Petitioner did not file any amended Form 1120 corporate tax return for its short taxable year ended September 23, 2011." In his objection to petitioner's Motion for Leave, however, respondent states that, in June 2015, "Petitioner filed with respondent's service center a Form 1120X that for the first time notified respondent of petitioner's claim for tax year 2011 research credits."

**[\*4]** seeking to amend its Petition to raise the issue of its entitlement to a research credit for 2011.

Rule 41(a) allows a party to amend its pleading as a matter of right before service of a responsive pleading. Amending a pleading (such as a petition) after service of a responsive pleading (such as an answer) requires leave of the Court unless the opposing party consents to the proposed amendment. But Rule 41(a) directs us to give leave "freely when justice so requires."

"[D]etermining the justice of a proposed amendment" requires an "examin[ation of] the particular circumstances in the case." *Estate of Quick v. Commissioner*, 110 T.C. 172, 178 (1998), *supplemented by* 110 T.C. 440 (1998). Among the circumstances considered are "whether an excuse for the delay [in raising the issue] exists and whether the opposing party would suffer unfair surprise, disadvantage, or prejudice if the motion to amend were granted." *Id.* We also take into account whether the issue sought to be raised would require the consideration of "stale evidence," the availability of relevant witnesses or documents, the time passed since the party's initial pleading, the "remoteness in time of [the] taxable years involved in the underlying dispute, or [the] completion of discovery and/or trial." *Scar v. Commissioner*, 81 T.C. 855, 867 (1983) (Swift, J., concurring), *rev'd on other grounds*, 814 F.2d 1363 (9th Cir. 1987).

II. *The Parties' Arguments*

A. *Petitioner's Motion*

Petitioner asserts that a movant can be "denied the opportunity to amend a pleading only where the amendment would prejudice the other party." It alleges that "[n]o such prejudice exists in this case" and that, consequently, "justice is best served by allowing [it] to assert its claim to the section 41 tax credits." According to petitioner, the research credit it seeks is not only "specifically authorized by Congress" but is also "consistent with a previous agreement with Respondent on the same issue for other tax years."

Petitioner claims that "[r]espondent would not suffer surprise because he has known about th[e] [research credit] issue for nearly seven years." Petitioner contends that, under our caselaw, "prejudice arises only where the proposed amendment creates a burden that would not have existed if the issue were raised in the original pleading." The absence of a "factual overlap" between petitioner's claim to a research

**[\*5]** credit and the section 367(d) issues resolved in our prior Opinion establishes, in petitioner's view, that "no such additional burden exists." The independence of the issues means that "there would have been no efficiencies created if Petitioner had raised the issue earlier." Whatever difficulties might be imposed on respondent and the Court in addressing the research credit issue, petitioner suggests, they would be no greater than if it had made its claim for a credit at the outset of the case.

Petitioner dismisses concerns about judicial economy on the ground that "there has been no trial in this case." Respondent can be given "as much time as he needs to consider Petitioner's entitlement to the tax credits."

Petitioner acknowledges that "'undue delay' may be a factor in deciding whether to grant a motion to amend a pleading" but insists that "delay is not by itself a justification for denying leave to amend." Quoting (with added emphasis) our opinion in *Nolte v. Commissioner*, T.C. Memo. 1995-57, 1995 WL 37631, at \*3, *aff'd*, 99 F.3d 1146 (9th Cir. 1996), petitioner reminds us that "an untimely amendment may properly be denied where there is no excuse for delay *and there is prejudice or substantial inconvenience to the adverse party*." From that proposition, petitioner draws the conclusion that its Motion for Leave "should be denied only if Respondent can demonstrate prejudice resulting from allowing Petitioner to raise the section 41 issue at this time."

Apparently relying on "Respondent's history of allowing [it] to claim" what it describes as "the same tax credits on the same basis for other tax years," petitioner assures us that "the question of whether [it] is entitled to the additional tax credits can be decided quickly and without any significant delay." Toward that end, it vows to "promptly provide to Respondent any additional support needed to verify [its] entitlement to the additional tax credits."

B.  *Respondent's Objection*

Respondent points out that petitioner, in its Motion for Leave, "offered no explanation of or justification for its failure to timely prosecute" its research credit claim. Respondent asks that, if we grant petitioner's Motion, we also give respondent leave to amend his Answer to raise a new issue of his own that, he says, would increase

**[*6]** petitioner's deficiency even if we allow petitioner the research credits it claims.

Respondent presents a history of the case in which, "at every critical moment," petitioner remained silent in regard to its claim for a research credit. Petitioner's repeated failures to raise the issue, respondent asserts, "became an admission that the research credit claim had been abandoned."

According to respondent, his counsel and petitioner's counsel first discussed the case in a phone call in October 2015. At that time, respondent's counsel was apparently aware of petitioner's claim to a research credit. In that initial call, respondent's counsel asked petitioner's counsel whether petitioner planned to amend its Petition to raise the research credit claim. A few days later, after discussing the matter with their client, petitioner's counsel allegedly advised respondent's counsel that petitioner had no plans to amend its Petition.

The case was then sent to respondent's Appeals office. Appeals' consideration of the case was apparently limited to the applicability of section 367: Petitioner did not raise the research credit issue in its initial protest or at any other time while the case was before Appeals.

In March 2019, however, petitioner *did* amend its Petition. But its Amended Petition—raising the 20-year useful life limitation provided in prior regulations—addressed only the amount of gain it should be required to recognize were section 367's gain recognition rule determined to apply. Petitioner' s Amended Petition made no mention of the research credit. Thereafter, petitioner joined respondent in advising the Court that resolution of the section 367 issue would fully dispose of the case. During a conference call on July 10, 2019, "the parties expressly advised the Court that the case could be disposed of in its entirety by cross motions for summary judgment."

Respondent also offers reasons why addressing the research credit issue at this stage in the case would be more difficult than if petitioner had raised the issue at the outset. Those involved in the examination of petitioner's prior research credit claims, for example, may have retired or been reassigned.

C.    *Petitioner's Response to Respondent's Objection*

Petitioner devotes most of its response to respondent's objection arguing that, if we were to grant its Motion and allow it to put before us

[*7] its claim to a research credit for 2011, we should nonetheless not allow respondent to raise the new issue he described in his objection. Petitioner makes no arguments in support of its own Motion beyond those made in the Motion itself. Moreover, petitioner again offers no explanation for its delay in seeking to raise the research credit issue. Nor does it refute any of the procedural background respondent provides in his objection to petitioner's Motion.

III.   *Analysis*

The argument petitioner advances in support of its Motion can be distilled to three points. First, undue delay in raising an issue cannot, by itself, be grounds to deny a motion for leave to amend a pleading; instead, such a motion can be denied only if the nonmoving party would be prejudiced. Second, prejudice to the nonmoving party must be measured on an incremental basis, comparing the burden that party would have to bear in addressing the belatedly raised issue to the burden that party would have borne if the issue had been raised at the outset of the case. And third, respondent would bear no incremental burden in this case because the research credit issue is completely independent of the section 367(d) issues addressed in our prior Opinion. As explained below, we disagree with petitioner on all three points.

A.    *Prejudice as the Sole Ground for Denial of a Motion for Leave to Amend a Pleading*

Petitioner's claim that prejudice is the sole ground that justifies denial of a motion for leave to amend a pleading misreads our caselaw. In *Ax v. Commissioner*, 146 T.C. 153, 166–67 (2016), one of the cases on which petitioner relies, we wrote that "prejudice to the non-moving party is *one of* the reasons to disallow an amendment to the movant's pleadings." (Emphasis added.) We thus recognized that other reasons might also justify, in and of themselves, denial of a motion for leave to amend a pleading.

To say, as we did in *Nolte*, that a motion for leave to amend a pleading can be denied when each of two factors (absence of excuse and prejudice) is present does not mean that the motion must be granted unless both factors are present. That absence of excuse and prejudice are *sufficient* factors to justify denial of a motion for leave to amend a pleading does not mean that either factor is *necessary*.

The statement in *Nolte* on which petitioner relies draws a conclusion from the opinion of the Supreme Court in *Foman v. Davis*,

**[*8]** 371 U.S. 178, 182 (1962). The following excerpt places the statement in context:

> In *Foman v. Davis . . .* the Supreme Court stated that leave to amend may be inappropriate in cases where there is:
>
>> any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. * * *
>
> Accordingly, an untimely amendment may properly be denied where there is no excuse for delay and there is prejudice or substantial inconvenience to the adverse party.

*Nolte v. Commissioner*, 1995 WL 37631, at *2–3. *Foman* suggested that any one of several listed factors—including "undue delay"—could justify a court's denial of a motion for leave to amend a pleading. If any *one* of those factors could justify denial of a motion, then, a fortiori, as we said in *Nolte*, a trial court would not abuse its discretion in denying a motion when two of those factors are present.

In its Motion for Leave, petitioner offered us no explanation for its having waited so long to raise its claim to a research credit for 2011. In his objection to petitioner's motion, respondent made allegations indicating that petitioner made a considered decision not to raise the research credit issue at each of several opportunities. In its response to respondent's objection, petitioner makes no effort to refute respondent's allegations, which we will therefore accept as accurately reflecting the procedural history.

Petitioner's efforts to elevate prejudice or substantial inconvenience as the sole dispositive factor, coupled with its repeated failures to provide any explanation for its delay in raising before the Court its claim to a research credit for 2011, convince us that petitioner has no good excuse for its delay. In respondent's unrefuted telling of the procedural history, petitioner's failure to have raised the research credit issue reflects a conscious decision not to pursue the issue.

**[\*9]**    Petitioner's failure to advance any excuse for its delay in raising the research credit issue gives us a sufficient basis for denying its motion for leave.  As noted above, the Supreme Court suggested in *Foman* that "undue delay," or any one of several other listed factors, could by itself justify a court's denial of a motion to amend a pleading.  And this Court confirmed in *Chanik v. Commissioner*, T.C. Memo. 1972-174, 31 T.C.M. (CCH) 851, 864, *aff'd*, 492 F.2d 1182 (6th Cir. 1974), that a moving party's "lack of diligence" in raising an issue timely can be "a sufficient reason to deny [a] motion to amend."

      B.     *Measuring Burden on the Nonmoving Party:* Ax's *Incremental Analysis*

We need not rest our denial of petitioner's Motion solely on its inability to explain its belated efforts to put before us its claim to a research credit.  Consideration of petitioner's claim could impose a significant burden on both the Court and respondent.  Claims for research credits tend to be fact intensive.  As we explained in *Little Sandy Coal Co. v. Commissioner*, T.C. Memo. 2021-15, at \*20:

> Given the complexity of factual issues involved in determining a taxpayer's eligibility for the research credit, it is not unusual for the taxpayer and the Commissioner to agree, in conducting cases that involve the credit, to single out a sample of research projects to be addressed by the court in the expectation that the court's decision in regard to the sample projects will enable the parties to resolve their differences in regard to the other projects.

Petitioner's claim for a research credit for 2011 cannot be identical to the claims respondent allegedly allowed, at least in part, for prior years.  Repeating in 2011 the very research activities conducted in prior years would have been pointless.  Petitioner asks that we take its word that its claim for a credit against its 2011 tax liability raises no factual or legal issues not already considered and resolved in prior years.  Respondent advises us, however, that his agents have not examined petitioner's 2011 research credit claim.  Because the research credit claim has not previously been in the case, respondent's counsel "did not perform discovery on the research credit claim during the pendency of this case."  As respondent observes, "[p]etitioner has made no demonstration of its entitlement to the claimed research credits."  We cannot know, at this juncture, the extent to which respondent might

[*10] agree to petitioner's claim for a research credit or how difficult it might prove to be to resolve any disagreements.

Petitioner suggests that, however difficult resolution of the research credit issue might be, it would be no more difficult now than if petitioner had raised the issue in the petition it originally filed. Our opinion in *Ax* provides some support for such an incremental analysis. *Ax* was a captive insurance case involving taxpayers' claims to deductions for premiums paid to a related insurer. In the notice of deficiency, the Commissioner disallowed the deductions because, he alleged, the taxpayers had not demonstrated that the deductions reflected expenses that had actually been paid. The Commissioner sought to amend his answer to assert that the amounts in issue were not "ordinary and necessary" within the meaning of section 162(a) and also to challenge the economic substance of the captive insurance arrangement.

The taxpayers' argument that the proposed amendment would prejudice them amounted to a claim that the additional grounds for denial of the deductions in issue would reduce their chances of prevailing. They described as "very simple" the issues raised in the notice of deficiency. *Ax*, 146 T.C. at 166. In its initial posture, the case was, in the taxpayers' words, "a straightforward expense substantiation dispute." *Id.* Simply proving payment, they reasoned, would have allowed them to "easily prevail." *Id.* By contrast, the taxpayers viewed the new issues the Commissioner sought to raise as "very complicated," *id.*, implicitly admitting that they were less likely to prevail on those issues.

In addressing the taxpayers' argument, we made the obvious point that "'prejudice' . . . does not mean mere disadvantage." *Id.* at 168. A party would not seek to amend its pleading unless it saw a potential advantage in doing so. And an amendment that advantages the moving party would necessarily disadvantage the party's opponent. That the issues that would be raised in an amended pleading "would make the case harder or more expensive for the other party than a pleading that lacks those issues," we reasoned, does not establish prejudice for purposes of Rule 41(a). *Id.* While we might have stopped there, we went on to suggest the incremental analysis petitioner embraces: "[T]he question is whether the addition of those new issues by a later amendment, rather than by inclusion in the initial pleading, works an unfair disadvantage to the other party." *Id.*

**[\*11]** While *Ax*'s incremental analysis may be useful, it should not be understood to render irrelevant the absolute burden the nonmoving party would bear from consideration of the new issue or issues. In prior cases, we emphasized the absolute burden the nonmoving party would bear from consideration of a new issue without explicitly considering how that burden might have been different (and lesser) had the movant raised the new issue at the outset. In *Wyman-Gordon Co. v. Commissioner*, T.C. Memo. 1985-433, 50 T.C.M. (CCH) 842, for example, the Commissioner sought to amend his answer to allege that purported loans made by one member of a consolidated group to its second-tier subsidiary were in fact equity investments. The original issue in the case had involved the excess loss account rules provided in Treasury Regulation § 1.1502-19. In denying the Commissioner's motion, we observed: "[T]he debt-equity issue [the Commissioner] now seeks to raise will not otherwise be litigated. Furthermore, it raises factual questions involving evidence quite dissimilar from the legal analysis which will be necessary to resolve the consolidated return issue." *Wyman-Gordon Co.*, 50 T.C.M. (CCH) at 843. We accepted as "obvious" that the "time and expense that would be incurred in litigating a debt-equity question involving a $2,038,161 loan" would be "substantial." *Id.* Under the circumstances, there was no apparent reason to believe that the time and expense of litigating the debt-equity issue would have been any less substantial had the Commissioner raised the issue in his initial answer, filed less than 11 months before his motion for leave to amend that answer.

*Leahy v. Commissioner*, 87 T.C. 56 (1986), involved investment tax credits claimed in respect of a movie purchased by a partnership in which the taxpayer-husband was a limited partner. In his notice of deficiency, the Commissioner had advanced several grounds for disallowing the credits. The parties submitted the case fully stipulated. On brief, the Commissioner raised for the first time an additional ground for disallowing the credits: the partnership and the taxpayers' failure to attach to their returns a statement required by the regulations. We acknowledged that "[i]t is within our discretion to permit a new issue or ground if we find that the opposing party is not prejudiced by such permission." *Id.* at 64. "Of key importance in evaluating the existence of prejudice," we wrote, "is the amount of surprise and the need for additional evidence on behalf of the party in opposition to the new position." *Id.* Because the Commissioner had not raised the issue of compliance with the reporting requirement in the notice of deficiency or in his pleadings, we accepted that the taxpayers "were surprised to learn of respondent's 'regulation position' on brief."

[*12] *Id.* The longer the delay in a party's disclosing a new theory, we reasoned, the greater the likelihood of prejudice to the other party. That was "especially true" in *Leahy*, "where there was no trial and the facts were fixed by agreement." *Id.* at 65. We presumed that the parties' submission of the case fully stipulated reflected "an understanding of the legal issues to be presented and defended." *Id.* at 64–65. A party's attempt to raise a new issue, we reasoned, is more likely to surprise his opponent if the parties had previously reached an agreement that circumscribed the relevant issues. We thus held that the taxpayers "were surprised by the new ground and their ability to present their case was prejudiced." *Id.* at 65. The prejudice followed from the surprise. We did not in *Leahy* engage in any explicit analysis of the incremental burden on the taxpayers of the Commissioner's having raised the reporting issue on brief instead of in his initial answer.

"Whether a motion seeking amendment [of a pleading] should be allowed lies within the sound discretion of the Court." *Estate of Quick*, 110 T.C. at 178. An appeals court will overturn a denial of leave to amend "only for an abuse of that discretion." *Manzoli v. Commissioner*, 904 F.2d 101, 107 (1st Cir. 1990), *aff'g* T.C. Memo. 1988-299. Given the broad discretion allowed to a trial judge to determine, on the basis of the particular facts and circumstances, whether a motion for leave to amend a pleading should be granted in a case, *Ax* should not be read to have established a hard and fast rule requiring the use of an incremental analysis to measure prejudice. Moreover, as explained above, prejudice to the nonmoving party is not, as petitioner would have it, a strict prerequisite for denial of a motion for leave to amend a pleading. The possibility of prejudice is simply one factor to be considered. It follows that a trial judge has latitude to determine not only the weight to be given to potential prejudice but also how that prejudice should be measured.

C.    *Respondent's Incremental Burden in the Present Case*

Even if a determination of prejudice were to require an incremental analysis of the type suggested in *Ax*, we are convinced that resolution of the research credit issue would be more difficult now than would have been had petitioner raised the issue in its initial petition. As noted above, we accepted in *Leahy* that the possibility of prejudice varies directly with the extent of the delay in raising the new issue. Recognition of that inevitable reality also influenced our decisions in *Estate of Ravetti v. Commissioner*, T.C. Memo. 1992-697, 1992 WL 357823, and *Nolte*.

[*13] *Estate of Ravetti* involved an executor's motion for leave to amend her petition to assert a statute of limitations defense. Although the decedent had executed consents to extend the statute, the executor claimed that the decedent had been incompetent when he did so. In explaining our denial of the executor's motion, we wrote:

> Under the circumstances of this case, we are not persuaded that justice would be served by allowance of the proposed amendment. Petitioner's proposed amendment would substantially inconvenience and unfairly prejudice respondent. Amendment of the petition here would require respondent to contest the competency 9 years ago of a taxpayer now long deceased. Most, if not all, of the evidence bearing on Silvio Ravetti's competence is under the control of and in the possession of petitioner. Petitioner's amendment necessarily would require a new round of discovery relating to Silvio Ravetti's mental competency in 1983. Respondent now would be required to locate witnesses and experts to testify regarding circumstances of 9 years ago. We do not believe that justice would be served by placing this burden on respondent at this time with respect to a consent on which respondent reasonably has relied for 9 years.

*Estate of Ravetti v. Commissioner*, 1992 WL 357823, at *2.

*Nolte* also involved taxpayers' belated attempt to raise the statute of limitations as an affirmative defense. The Commissioner alleged that the taxpayers had executed a Form 872–A, Special Consent to Extend the Time to Assess Tax, consenting to extend the limitation period. While she was unable to find an executed consent form in her files, she said that her administrative file included "secondary evidence" of execution of consents. *Nolte v. Commissioner*, 1995 WL 37631, at *2.

We denied the taxpayers' motion for leave to amend in *Nolte*, reasoning that their "proposed amendment would substantially inconvenience and unfairly prejudice" the Commissioner. *Id.* at *3. "Amendment of the petition," we observed, "would require [the Commissioner] to locate witnesses to testify about events occurring more than 8 years ago regarding the alleged execution of the Form 872–A for" the year in issue. *Id.*

**[\*14]** Allowing petitioner to amend its Petition would require respondent to undertake an examination of petitioner's entitlement to a research credit for a taxable year that ended more than 10 years ago. The prospect of stale evidence looms larger now than it would have had petitioner given respondent reason to open an examination back in 2015. *Cf. Scar*, 81 T.C. at 867 (Swift, J., concurring).

Petitioner apparently expects that, upon a quick and relatively effortless perusal of the documentation it promises to provide, respondent will readily accept petitioner's entitlement to the claimed credit. We cannot share petitioner's confidence.

Petitioner's apparent ability to have reached an agreement with respondent concerning the allowance of research credits for years before 2011 does not establish that the parties would easily resolve any differences in regard to petitioner's 2011 claim. Petitioner advises us that its 2011 claim "follows the same methodology" it used in claiming credits for 2008 through 2010. Petitioner provides no further description of its "methodology." Whatever petitioner means by that term, its 2011 claim will necessarily involve facts that differ from those considered in prior years. Those different facts may raise different legal issues. And the relevant legal landscape may have changed in the many intervening years.

D.    *Considerations of Judicial Economy*

Finally, we are unpersuaded by petitioner's "judicial economy" argument. Petitioner acknowledges that we have "denied motions to amend pleadings that were filed after a trial based upon 'the established policy of this Court to try all the issues raised in a case in one proceeding.'" The prospect that a posttrial motion for leave can properly be denied does not establish that we have no choice but to grant a motion for leave made in any case in which no trial has yet been held. Although we resolved without trial the section 367(d) issues the parties presented on summary judgment, the case required extensive proceedings up to that point. The parties submitted thousands of pages of stipulated documents in connection with their Motions for Summary Judgment. The burden on the Court of resolving the section 367(d) issues was not materially different because the parties submitted those documents by stipulation rather than in a trial. In positing that respondent be given "as much time as he needs to consider [its] entitlement to tax credits," petitioner, in effect, asks that we put on indefinite hold a case we have already decided and require respondent to open, conduct, and complete

**[\*15]** an examination of a previously unexamined issue. Our caselaw does not establish that parties are, in all events, entitled to one trial. In several of the cases discussed above (*Nolte*, *Wyman-Gordon Co.*, *Leahy*, and *Estate of Ravetti*), we denied motions for leave to amend pleadings in cases in which no trial had yet been held.

IV.    *Conclusion*

In short, petitioner's repeated failure to offer any explanation for its lengthy delay in seeking to raise its claim to a research credit for the taxable year in issue is sufficient justification, by itself, to warrant denial of its motion. Moreover, considering petitioner's claim to a research credit more than 10 years after the close of the taxable year in issue could impose a considerable burden on respondent and the Court– a burden likely to be greater than it would have been had petitioner raised the issue in the petition it filed more than 6½ years ago. Taking into account "the particular circumstances in the case," *Estate of Quick*, 110 T.C. at 178, we conclude that justice does not require granting petitioner leave to amend its petition.

*An appropriate order and decision will be entered.*